16986

MRS. CLEO CHAPMAN BARKLEY, Appellant, v. INTERNATIONAL MUTUAL INSURANCE CO., INC., Respondent

*(86 S. E. (2d) 603)*

*Messrs. LeRoy M. Want,* of Darlington, and *C. M. Edmunds,* of Sumter, *for Appellant,*

*Messrs. Nelson, Mullins & Grier,* of Columbia, and *Wein-berg & Weinberg,* of Sumter, *for Respondent,* ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Messrs. LeRoy M. Want,* of Darlington, and *C. M. Ed-munds,* of Sumter, *for Appellant, in Reply.*

March 30, 1955.

PER CURIAM.

The sole question to be decided in this appeal is whether a brother of an insured, who is married, with a family of his own and living separate and apart from the insured, is a member of the insured's *immediate family* within the meaning of an automobile liability policy which provides that the policy only covered the named insured and members of his *immediate family* when operating the insured's automobile with his permission.

The facts giving rise to this litigation are not in dispute and, as stipulated for the record, are as follows:

Vincent Adams (or Vinson Adams, his given name being spelled both ways in the record), the insured, was the owner of a Ford automobile, and while he and his wife and child were residing in Montgomery, Alabama, the respondent, an Alabama corporation, issued to him the policy of insurance here involved.

Some time later the insured loaned this automobile to his full brother, Kendall Richard Adams. Each of the brothers

was married and lived in separate homes, not in the same State. At the time of the collision hereinafter referred to, the *situs* of the insured's household was at Andrews, North Carolina. The brother of the insured had his family and household at Sumter, South Carolina, during said times.

The said brother of the insured, while using the automobile with the permission of the insured, was involved in an automobile collision with the appellant in Sumter County, South Carolina. Appellant brought suit in the Magistrate's Court in the City of Sumter against the brother of the insured, which action, by consent, was transferred for trial to the Civil Court of Sumter County, and there secured a default judgment against him in the amount of $920.65.

Upon the refusal of the respondent to pay this judgment obtained against the brother of the insured, this action was instituted by the appellant, Mrs. Cleo Chapman Barkley, against the respondent, International Mutual Insurance Co., Inc. In this action the appellant seeks to require the respondent to pay the judgment in the amount of $920.65 on the theory that the brother of the insured was covered by the policy of insurance issued by the respondent to the insured.

The matter was heard by the Judge of the Civil Court of Sumter County on the above agreed statement of facts, who rendered judgment for the respondent. From this judgment the appellant has prosecuted this appeal.

At the time of the collision the liability insurance policy issued by the respondent was in full force and effect, and an endorsement was attached thereto as follows:

"Insuring agreement III is hereby deleted and the following is substituted in lieu thereof:

"With respect to the insurance for Bodily Injury Liability and for Property Damage Liability and Liability for Medical Payments, the unqualified word insured includes and is limited to (1) the named, insured, and (2) members of the immediate family of the named insured when said automobile is operated by one of them with the permission

of the named insured, and coverages A, B and C of this policy are in force only when said automobile is so operated."

It will be seen therefore that the issue here concerns the proper interpretation and construction to be placed on the policy provisions limiting coverage to the insured and members of the insured's *immediate family*. Does a brother, living separate and apart from the insured, with a family of his own and with no ties of dependency, constitute a member of the insured's immediate family within the policy provisions? We think not.

This policy was written and delivered to the insured in the State of Alabama while the insured was living there; and, under well settled principles the policy must be construed in the light of the law of the State of Alabama. *Cantey v. Philadelphia Life Ins. Co.,* 166 S. C. 181, 164 S. E. 609; *Jones v. Prudential Ins. Co.,* 210 S. C. 264, 265, 42 S. E. (2d) 331.

The respondent cites the Alabama case of *Home Ins. Co. v. Pettit,* 225 Ala. 487, 143 So. 839, 840, as sustaining its contention that the brother of the insured, under the circumstances here, is excluded from coverage under the policy provisions limiting liability to the insured's immediate family. While it is true that this case dealt with a construction of the term "household" as used in a theft policy of insurance, the reasoning used is persuasive and we think controlling here. The Court pointed out that the terms "household" and "family" are often used interchangeably, and cited with approval the following definition from 19 Cyc. p. 450 of the term "family":

"* * * unless the context manifests a different intention the word 'family' is usually construed in its primary sense. In its ordinary and primary sense the term signifies the collective body of persons living in one house, or under one head or manager, or one domestic government; the relations between such persons necessarily being of a permanent or domestic character, not that of persons abiding temporarily

together as strangers; a household; those who live under the same roof with the *pater-familias*, who forms his fireside; * * *."

The appellant contends, however, that where the ▮ language used in an insurance contract is ambiguous, or where it is capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured. These legal principles are so well settled as to require the citation of no authority in their support. However, these principles are not applicable here; for ·there is, in our opinion, no ambiguity in the policy provisions before us. In the absence of ambiguity in the policy provisions, the terms used are to be taken in their plain, ordinary and popular sense. *Bolen v. Capital Life & Health Ins. Co.*, 208 S. C. 345, 38 S. E. (2d) 79.

As seen by the foregoing citation from the case of *Home Insurance Co. v. Pettit, supra,* the Alabama Supreme Court has approved the definition of the term "family," in its ordinary and primary sense, as "the collective body of persons living in one house, * * *." See for similar definition: *Moyer v. Drummond,* 32 S. C. 165, 10 S. E. 952, 7 L. R. A. 747. Here, we are dealing with the term "immediate family," one more restricted in meaning and scope. Black's Law Dictionary gives as the meaning of the word "immediate": "Not separated in respect to place, not separated by the intervention of any intermediate object, cause, relation or right."

The courts of other jurisdictions have had occasion to construe the words "immediate family" when used in the regulations of mutual benefit societies. In construing the term as used in the policies of such societies, the courts generally hold that it is a restricted term and exclude from its meaning one living separate and apart from the particular household of which the insured is a member. 38 Am. Jur., Mutual Benefit Societies, Sec. 153.

The brother of the insured was living at the time separate and apart from the household of the insured. In fact, it does not appear that the brother ever lived in the household of the insured. There is nothing to indicate that by the use of the term "immediate family" the contracting parties intended to include within its coverage members of any other household than those of the insured. We think that under the foregoing definitions, approved by the Alabama Court, the brother of the insured, under the facts here, is excluded from coverage under the policy provisions as a member of the insured's "immediate family."

The appellant contends, however, that the public policy of the State of South Carolina requires that brothers, married and living apart, be considered as members of one another's immediate family within the terms of a liability policy intended to protect the general public. This contention is based upon the provisions of the South Carolina Motor Vehicle Safety Responsibility Act, Title 46, Chapter 3.1, 1954 Supplement, Code of Laws. Section 46-750.22 thereof provides in part with respect to the requirements of the owner's policy of liability insurance, as follows:

"An owner's policy of liability insurance shall:

\* \* \*

"(2) Insure the person named therein and any other person, as insured, using any of such motor vehicles with the express or implied permission of the named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicles within the United States of America or the Dominion of Canada, \* \* \*."

The State of Alabama has a similar statute, Code 1940, Tit. 36, § 74(42) *et seq.* Neither the statute in Alabama or South Carolina requires a person to carry insurance. Until one has an accident, either in South Carolina or Alabama, he can operate a motor vehicle without liability insurance. It is only after an accident that one must furnish proof of

financial responsibility or secure a liability policy to cover accidents in the future. The brief of appellant concedes that "both the Alabama Act and the South Carolina Act are in connection with a policy of insurance to be furnished by one required to show proof of financial responsibility under the Act."

The policy in question was not issued and certified as proof of financial responsibility in accordance with the Act, but was a voluntary policy. In other words, the insured was not required by either the law of South Carolina or Alabama to secure the policy in question, but, in so far as this record shows, voluntarily did so. Since the policy was not issued pursuant to the Act, the parties were free to enter into it without the compulsions imposed by that law. As stated in *Farm Bureau Mutual Auto. Ins. Co. v. Hammer*, 4 Cir., 177 F. (2d) 793, 797, in discussing the Virginia Financial Responsibility Act:

"The requirements of the statute, in short, apply only to policies certified as proof of financial responsibility in accordance with the Act. The scheme of the statute is to afford sanctions against any person whose operation of a motor vehicle has resulted in injuries to others, unless he satisfies judgments against him for damages arising from the operation of the vehicle and also proves in the manner provided by the statute that he is financially able to respond in damages for any accidental injury that may subsequently occur. This interpretation of the statute is in accordance with the general holding that financial responsibility acts somewhat similar to the Virginia statute do not apply to policies which have not been certified as proof of financial responsibility at the time of the accident." (Citing authorities.)

We cannot read into the insurance contract, under the guise of public policy, provisions which are not required by law and which the parties thereto clearly and plainly have failed to include.

Affirmed.