**Irene NOVAK, Administratrix of the Estate of Sally Jo Schulte, Deceased, Plaintiff and Appellant,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Defendant and Appellee.**

**No. 12771.**

Supreme Court of South Dakota.

Argued April 23, 1980.

Decided June 18, 1980.

James Robbennolt of Duncan, Olinger, Srstka, Lovald & Robbennolt, Pierre, for plaintiff and appellant.

Eugene D. Mayer of Riter, Mayer, Hofer & Riter, Pierre, for defendant and appellee.

DUNN, Justice.

Plaintiff (appellant) appeals the judgment entered below after a court trial on stipulated facts. The judgment dismissed plaintiff's claim against defendant (appellee) insurance company. We reverse.

The plaintiff is the natural mother of Sally Jo Schulte, who was killed in an automobile accident July 28, 1972, just east of Watertown, South Dakota. The car in which Sally Jo Schulte was a passenger at the time of her death was driven by Lloyd Kretsinger, the decedent's cousin, and the son of the defendant's insured, Harriet Kretsinger. Lloyd Kretsinger was also killed in the accident. The mothers of the children were each appointed special administratrix of the estates of their respective children for the purpose of bringing and defending an action to determine the liability of Lloyd Kretsinger's estate for the death of Sally Jo Schulte.

The car in which the decedents were riding was insured by the defendant under its automobile policy # 0639 138–D14–41B, which provided comprehensive coverage for the Kretsinger vehicle involved. At the time of Sally Jo Schulte's death, she and her cousin, Lloyd Kretsinger were enroute to Watertown where Sally Jo Schulte had applied for and been accepted in a hair styling course at the Lake Area Vocational/Technical School. Specifically, the purpose of the journey was to confer with school officials and make further arrangements to attend school in late August.

At the time of the accident, Sally Jo Schulte had been staying in the Kretsinger home at Elkton, South Dakota, for approximately two months prior to July 28th. Before arriving in Elkton, Sally Jo Schulte had been a resident of the State Training School in Plankinton for some period of time.

Subsequent to her appointment as special administratrix of the estate of Sally Jo Schulte, the plaintiff instituted suit against the estate of Lloyd Kretsinger in the circuit court of Brookings County to recover damages incurred as a result of the accident. The defendant was given notice of the plaintiff's claim in that matter, but consistently denied coverage and refused to defend the action. On November 8, 1977, the plaintiff recovered an uncontested judgment against the estate of Lloyd Kretsinger in the sum of $26,813.00. On December 12, 1977, an execution in the amount of the judgment against the estate of Lloyd Kretsinger was returned unsatisfied by the sheriff of Brookings County.

This action was then commenced pursuant to SDCL 58–23–1. Defendant denied the plaintiff's claim based upon exclusions in its policy providing no coverage for certain defined insureds under the policy or for members of the family of the principal insured residing in the same household as the principal insured. The plaintiff contends that Sally Jo Schulte was not excluded from the coverage by either provision, or, in the alternative, that the cited exclusions are violative of the public policy of this jurisdiction as it is legislatively expressed in the statutory financial responsibility law found at SDCL 32–25.

The trial court in its memorandum decision denied the plaintiff's claim on each of the alternative bases and dismissed the complaint. This appeal follows.

Appellant contends that the household exclusion in her insurance policy violates

SDCL 32–35, our financial responsibility laws. We disagree. The purpose behind this law is to protect against financially irresponsible persons from using our highways. We see nothing inconsistent between SDCL 32–35 and the household exclusion clause.

■ This is an issue of first impression in this state, although the issue has arisen in many other jurisdictions. The clear majority rule, as evidenced by annotations found at 8 A.L.R.3d 388 and 46 A.L.R.3d 1024, is that household exclusion policies do not violate financial responsibility laws similar to ours. We choose to follow the majority rule, which holds that this type of exclusion does not contravene the statute unless the policy has been certified as proof of financial responsibility under SDCL 32–35.

In South Dakota, a person is not required to have liability insurance to obtain a driver's license or to operate a motor vehicle. It is only when the provisions of SDCL 32–35 operate to require proof of future financial responsibility that the provisions of SDCL 32–35–70 come into effect. This latter section requires that proof of future financial responsibility (a certified insurance policy being one method of such proof) must be made as to damages imposed by law in the future. It is clear that "damages imposed *by law*" would include damages suffered by members of defendant's household, but the instant insurance policy was not issued to establish proof of financial responsibility, and thus need not provide coverage for all damages "imposed by law." The only means by which an insurance policy may serve as proof of responsibility is when it has been officially certified pursuant to SDCL 32–35–65. This policy was not certified and thus need not satisfy, because it was not intended to satisfy, the financial responsibility laws of SDCL 32–35.

Under SDCL 32–35–43, proof of financial responsibility is required (1) when there exists an outstanding judgment upon a cause of action arising from ownership, maintenance, or use of vehicles subject to registration, and (2) when a person has been convicted of or forfeited bail for certain motor vehicle offenses. It is clear neither of these conditions were present when this policy was issued. Hence, the mandatory requirements of SDCL 32–35–70, which would eliminate the policy defense of household exclusion, did not come into effect. Simply, this policy was voluntarily purchased and was not intended to serve as proof of future financial responsibility. This is the majority approach, and is fully elucidated in *Lewis v. Mid-Century Insurance Company*, 152 Mont. 328, 449 P.2d 679 (1968).

■ We are well aware of the rule that an insurance policy will be construed, if reasonably possible, so as to furnish protection. *Giokaris v. Kincaid*, 331 S.W.2d 633 (Mo.1960). It is also an accepted principle, however, that where language is unequivocal and not ambiguous, it will be given its plain meaning. *State v. Trimble*, 306 Mo. 295, 267 S.W. 876 (1924). There is a section in this policy stating that the policy, "when certified," will satisfy all *applicable* financial responsibility laws. Neither the phrase "when certified" in the insurance policy nor the certification procedure outlined in SDCL 32–35–65 leaves room for construction. The language in both instances is unequivocal. This policy was a contract between the insurer and the insured. In view of the policy's clear and unambiguous language, we cannot read coverage into this insurance contract which is not required by law or included by the parties. *Barkley v. International Mutual Insurance Co.*, 227 S.C. 38, 86 S.E.2d 602 (1955).

Plaintiff cites *Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975), as authority for the argument that the instant insurance policy violates SDCL 32–35. This reliance is misplaced, because the North Dakota financial responsibility laws differ from ours. It is clear that the sanctions imposed by N.D.C.C. 39–16–05 apply to a person's *first* accident, whereas SDCL 32–35 applies only to proof of *future* financial responsibility. The sanctions of N.D. C.C. 39–16–05 will not apply, however, when the person has an insurance policy at the time of his first accident that affords "substantially the same coverage" as poli-

cies issued in conformity, i.e., "certified," with N.D.C.C. 39–16.1. The *Hughes* court then reasoned, and probably correctly under North Dakota law, that a person who *voluntarily* purchases an insurance policy before his first accident may do so specifically to satisfy the "substantially the same coverage" language in N.D.C.C. 39–16–05. The phrase "substantially the same coverage" was interpreted by the North Dakota court as meaning coverage that does not contain the household exclusion and would thus provide coverage for *all* damages imposed *by law*, regardless of the relationship between the parties.

Hence, the North Dakota Supreme Court struck down all household exclusion clauses in *Hughes* based only upon these differences between North Dakota law and SDCL 32–35. It would be unwise and improper to follow the reasoning in *Hughes* when our law differs substantially in the above-mentioned manner.

■ We come now to the issue of whether Sally Jo Schulte was a member of the Kretsinger household at the time of the accident. Unlike the phrase "when certified," the phrase "same household" is of uncertain meaning. *Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Swit.*, 35 N.J. 1, 170 A.2d 800 (1961). We adopt the reasoning of *Crossfield v. Phoenix Ins. Co.*, 77 N.J.Super. 476, 479, 187 A.2d 20, 21 (1962), citing *Mazzilli*, supra, that:

> "[W]here the policy provision ("same household") under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied."

We are dealing here with a term of exclusion, and thus we apply a strict construction to the term "same household."

The stipulation of facts that formed the basis of the lower court's judgment is sketchy. We do not know: Why Sally Jo was placed at the training school; why she was placed or chose to move in with the Kretsingers after her release from the training school; or the point in time when she applied to or was accepted by the hair-styling school in Watertown. We are able, however, through reasonable inference from the factual stipulation to fill in the gaps.

Although the stipulation *merely* states that Sally Jo was traveling to Watertown to make further arrangements with school officials (rather than travelling to "find a place to live"), we do know that she had unequivocally been accepted by the school. We must take judicial notice of the fact that Elkton is about 65 miles from Watertown and, hence, it is extremely unlikely that Sally Jo would have considered commuting on a daily basis between the two towns. There is no evidence of such an intention in the stipulation, nor is there any evidence that Sally Jo even had access to an auto. Consequently, we must assume that if, indeed, Sally Jo planned on attending school in Watertown, she would have lived in Watertown.

In order to determine whether Sally Jo intended to enroll at the school in Watertown, we must look for outward manifestations of her intentions. We cannot ascertain from the stipulation precisely what is meant by, "make further arrangements" to attend school, but it is uncontroverted that she had applied to and been accepted at the school. There is an infinite number of possibilities as to what may have transpired, had Sally Jo not been killed, between the date of the accident and the date school was to commence. We may not indulge ourselves, however, in such unfounded speculation, and we prefer to accept the fact that Sally Jo was going to attend school as a reasonable inference from the stipulation of facts.

■ It thus becomes evident that sometime prior to the fatal accident Sally Jo's stay with the Kretsingers had become one of definite and short duration. The concepts of "household" and "domicile" are clearly analogous to the extent that the intent of the person involved is paramount.

*Doern v. Crawford*, 30 Wis.2d 206, 140 N.W.2d 193 (1966). In *Pamperin v. Milwaukee Mutual Ins. Co.*, 55 Wis.2d 27, 197 N.W.2d 783 (1972), the court, citing *National Farmers Union Property & Cas. Co. v. Maca*, 26 Wis.2d 399, 132 N.W.2d 517 (1965), stated:

> "*We think that one is not a resident of the household or member of the family if, even though he has no other place of abode, he comes under the family roof for a definite short period or for an indefinite period under such circumstances that an early termination is highly probable.* . . ."

55 Wis.2d 27, 35, 197 N.W.2d 783, 787.

The facts of the instant case, although set forth in a minimal fashion in the stipulation, are sufficient to give a picture of a young girl who had just been released from the state training school and needed some time to decide upon her next venture. This is not a case of a young lady returning to the home where she had resided previously because she had never lived with the Kretsingers prior to May 23, 1972. At some date during this two-month interval in the Kretsinger household the decedent had enrolled in a vocational school to receive the training needed for a new life and career.

Keeping in mind our previous statement that an exclusionary clause must be given strict construction, we find that Sally Jo came under the Kretsinger roof for an indefinite period but under such circumstances that an early termination was probable. Furthermore, at some point in time before the accident, her stay became one of definite and short duration. We thus find that Sally Jo was not a member of the Kretsinger household and that the household exclusion in Mrs. Kretsinger's policy does not apply. We find that the trial court in holding for the defendant failed to interpret the facts in the light of the principle of strict construction of exclusionary terms.

Reversed with instructions to enter judgment in favor of plaintiff.

MORGAN, HENDERSON and FOSHEIM, JJ., concur.

WOLLMAN, C. J., dissents.

WOLLMAN, Chief Justice (dissenting).

I agree with the majority opinion that the stipulation of facts that formed the basis of the lower court's judgment is sketchy. Indeed, the relevant facts are contained in the following paragraphs of the stipulation:

## VII.

Sally Jo Schulte was the niece of Harriet Kretsinger (the daughter of Harriet Kretsinger's brother) and had lived and resided in the home of Harriet Kretsinger since May 23, 1972, continually to the date of the accident and during which time Harriet Kretsinger had provided the entire support of Sally Jo Schulte, including but not limited to food, shelter and clothing without any outside aid or assistance whatsoever.

## VIII.

Sally Jo Schulte came to live in the home of Harriet Kretsinger from the State Training School at Plankinton, with the approval and consent of Floyd LaVake of Watertown, South Dakota, a parole officer with the State Pardon and Parole Board.

## IX.

Prior to the accident here involved, Sally Jo Schulte had applied for enrollment and had been accepted in the vocational school at Watertown, South Dakota and was due to begin her studies there during the latter part of August, 1972, and the purpose of the trip during which the accident occurred was to confer with school officials in Watertown and make further arrangements for attending school in the fall.

## X.

The home of Harriet Kretsinger is located at or near Elkton, South Dakota.

If we are to draw inferences from the stipulation, then it seems only reasonable to conclude that upon her release from the State Training School (whatever the reason for her commitment there) Sally Jo Schulte, with the approval and consent of her parole officer, came to live in the home of her aunt because she had no other home.

One of the cases cited in the majority opinion states:

[T]he terms "resident or member of the same household," as used in policies of automobile liability insurance, are not ambiguous and, therefore, should be construed in light of their plain and common meaning. It makes no difference whether the terms are employed to define exclusion or inclusion from coverage, or whether the question is one of creating or terminating the relationship.

Pamperin v. Milwaukee Mutual Ins. Co., 55 Wis.2d 27, 37, 197 N.W.2d 783, 789 (1972). Under the facts given to us, Sally Jo Schulte was a resident of her aunt's household.

I have no quarrel with the proposition of law for which the majority cites the Pamperin case. What I do object to is that in order to apply that principle of law to reach the conclusion that the exclusionary clause of the insurance policy does not apply, the Court must draw inference upon inference from a stipulation so devoid of relevant facts. One would think that plaintiff could have offered at least some evidence regarding her relationship with her daughter, the circumstances under which her daughter was sent to the State Training School, and the circumstances under which it was decided that her daughter should be placed in the home of Harriet Kretsinger. Indeed, had the parole officer alone been called to testify regarding the circumstances under which Sally Jo Schulte was placed in the home of her aunt and whether it was contemplated at that time that she would leave the home in the fall to attend school in Watertown, we could very well have had an adequate factual basis upon which to reach the conclusion that Sally Jo was not residing in the same household as the principal insured within the meaning of the exclusionary clause of the policy. The facts of this case, or so few of them as have been vouchsafed to us, are far different from those in the Pamperin case, supra, where it was clear that the relative had moved into the home to give only temporary assistance during the illness of an aged relative.

Although it is hard to quarrel with the result reached by the majority opinion, I am troubled by the fact that in order to reach this result the Court has been forced to rely so greatly upon inferences to supply the proof that plaintiff was so unwilling to adduce. Why plaintiff's reluctance to establish an adequate factual basis for her claim should be thus rewarded I do not know, but it does little to enhance the appellate process to strain the limits of inferential reasoning to supply that which the record does not offer.

I would affirm the decision of the trial court.