**CIMARRON INSURANCE COMPANY, a Kansas Corporation, Plaintiff and Appellee,**

v.

**Allen Paul CROYLE, Sr. and Allen Paul Croyle, Jr., Defendants,**

**and**

**Nonanna A. Croyle, Defendant and Appellant.**

**Nos. 17415, 17422.**

Supreme Court of South Dakota.

Considered on Briefs May 23, 1991.

Reassigned Oct. 31, 1991.

Decided Jan. 8, 1992.

---

William A. May of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for plaintiff and appellee.

Bruce H. Ellison, Rapid City, for defendant and appellant Nonanna A. Croyle.

MILLER, Chief Justice (on reassignment).

This is an appeal dealing with the validity of a "household exclusion" in an automobile insurance policy. The trial court held that the exclusion is invalid and unenforceable for claims up to the limits mandatorily required by the state's financial responsibility law, but valid and enforceable for claims in excess thereof, irrespective of the policy limits. We affirm.

## FACTS

On or about November 9, 1988, Allen Paul Croyle, Jr. (Croyle) was driving his father's 1973 Oldsmobile in Rapid City, South Dakota, when he collided with a vehicle driven by Jeanette St. Peter. Croyle was accompanied in the vehicle by his sister Nonanna. As a result of the collision, St. Peter died[1] and Nonanna suffered personal injuries.

At the time of the accident, the automobile was insured by Cimarron Insurance Company (Cimarron) under a policy purchased by Croyle's father (insured). The insurance policy provided liability coverage in the amount of $300,000. Additionally, the policy provided both uninsured and underinsured coverage, each in the amount of $300,000. The policy also contained a household liability coverage exclusion, which stated: "We do not provide liability coverage for any person for bodily injury to you or any family member." The policy defined a family member as a person related by blood, marriage, or adoption, who is a resident of the insured's household. Likewise, the underinsured portion of the policy

---

1. Croyle was subsequently convicted of vehicular homicide.

stated an "underinsured motor vehicle" does not include any vehicle "owned by or furnished or available for the regular use of you or any family member."

Nonanna filed a claim against Cimarron based upon her brother's negligence. Cimarron advised Croyle that insurance coverage would not be provided under insured's policy; however, Cimarron agreed to defend Croyle, reserving any rights it had to deny coverage based upon the policy's exclusions.

Subsequently, Cimarron filed a declaratory judgment action against Nonanna, Croyle, and insured. After the amended complaint was answered, cross-motions for summary judgment were filed. Nonanna alleged the household exclusion contained in the liability portion of the policy was rendered void when the South Dakota Legislature adopted a mandatory financial responsibility law for all vehicles. *See* SDCL 32–35–113 and SDCL 32–35–70. Cimarron argued the household exclusion was not void or, in the alternative, it was void only to the extent of the mandatory limits required by the financial responsibility law ($25,000).

The trial court held that the household exclusion contained in the liability portion of the policy was void and unenforceable up to the $25,000 coverage required by statute. However, the trial court held that the household exclusion was valid and enforceable for the amount of coverage exceeding the $25,000 statutory minimum. In other words, the trial court held Cimarron liable for Nonanna's injuries up to $25,-000.

Prior to entry of summary judgment, Nonanna submitted an additional argument to the effect that the household exclusion was contrary to the "reasonable expectations" of the insured. The trial court heard limited testimony on that issue. After hearing the testimony, and without acknowledging the applicability of the reasonable expectations doctrine, the trial court

found insured did not have a reasonable expectation of coverage.

Nonanna appealed to this court and Cimarron cross-appealed. We consider the following issues:

## I.

WHETHER CIMARRON'S HOUSEHOLD EXCLUSION IS VOID AS CONTRARY TO SDCL 32–35–113, SDCL 32–35–70 AND PUBLIC POLICY, AND, IF SO, WHETHER IT IS VOID IN ITS ENTIRETY OR ONLY AS TO THE STATUTORY MINIMUM COVERAGE.

## II.

WHETHER NONANNA CROYLE IS ENTITLED TO UNDERINSURED BENEFITS PURSUANT TO THE CIMARRON POLICY.

## I.

■ Prior to 1986, South Dakota's Financial Responsibility Law required proof of financial responsibility only after a motorist was involved in an accident or convicted of certain motor vehicle offenses. *See* SDCL 32–35–43; *Novak v. State Farm Mut. Auto. Ins. Co.*, 293 N.W.2d 452 (S.D. 1980). However, in 1986, the South Dakota Legislature mandated that all owners and operators of motor vehicles maintain proof of financial responsibility for future events. Pursuant to SDCL 32–35–113:

> Every driver or owner of a motor vehicle shall at all times maintain in force one of the forms of financial responsibility on the motor vehicle by one of the following methods:
>
> (1) Having in force on the motor vehicle an owner's policy of liability insurance as provided in § 32–35–70[.][2]

SDCL 32–35–70 provides, in pertinent part:

> An owner's policy of liability insurance ... shall insure the person named therein and any other person as insured, using any insured vehicle or vehicles with the express or implied permission of the

**2.** In addition to liability insurance, future financial responsibility may be demonstrated by (1) having a bond in force, (2) maintaining a certifi-

cate of deposit of money or securities, or (3) self-insurance. SDCL 32–35–113(2), (3), (4).

named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the vehicle or vehicles ... subject to limits exclusive of interests and costs, with respect to each insured vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and twenty-five thousand dollars because of injury to or destruction of property of others in any one accident[.]

In *Novak*, we acknowledged our willingness to void household exclusions where maintaining automobile liability insurance was mandated by statute: "[T]he mandatory requirements of SDCL 32–35–70 ... *would eliminate the policy defense of household exclusion* [.]" 293 N.W.2d at 454 (emphasis added). At the time *Novak* was decided, the provisions of SDCL 32–35–70 were not mandatory.

The above statutes create a strong public policy favoring monetary protection and compensation for the benefit of those injured through the negligent operation of a vehicle. Cimarron's household exclusion effectively renders Nonanna, and others like her, uninsured and thus unprotected, in violation of public policy. These exclusions are:

> [P]articularly disturbing when viewed in light of the fact that this class of victims is the one most frequently exposed to the potential negligence of the named insured. Typical family relations require family members to ride together on the way to work, church, school, social functions, or family outings. Consequently, there is no practical method by which the class of persons excluded from protection by this provision may conform their activities so as to avoid exposure to the risk of riding with someone who, as to them, is uninsured.

*Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wash.2d 203, 208, 643 P.2d 441, 444 (1982).

The vast majority of jurisdictions hold such household exclusions invalid under similar statutory schemes. *See, e.g., Arceneaux v. State Farm Mutual Automobile Ins. Co.*, 113 Ariz. 216, 550 P.2d 87 (1976); *Stevens v. State Farm Mutual Automobile Ins. Co.*, 21 Ariz.App. 392, 519 P.2d 1157 (1974); *DeWitt v. Young*, 229 Kan. 474, 625 P.2d 478 (1981); *Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865 (Ky. 1981); *State Farm Mut. Auto. Ins. Co. v. Traycik*, 86 Mich.App. 285, 272 N.W.2d 629 (1979); *State Farm Mut. Auto. Ins. Co. v. Sivey*, 404 Mich. 51, 272 N.W.2d 555 (1978); *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820 (1983); *Estate of Neal v. Farmers Ins. Exch.*, 93 Nev. 348, 566 P.2d 81 (1977); *Estep v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 105, 703 P.2d 882 (1985); *Allstate Ins. Co. v. Anzalone*, 119 Misc.2d 222, 462 N.Y.S.2d 738 (1983); *Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975); *Jordan v. Aetna Casualty & Surety Company*, 264 S.C. 294, 214 S.E.2d 818 (1975); *Mutual of Enumclaw, supra; Farmers Ins. Exchange v. Call*, 712 P.2d 231 (Utah 1985). *See generally*, Annotation, *Validity, under insurance statutes, of coverage exclusion for injury to or death of insured's family or household members*, 52 A.L.R.4th 18 (1987).

We hereby declare Cimarron's household exclusion in the liability portion of the policy invalid as violative of South Dakota public policy.

■ Having found that Cimarron's household exclusion violates public policy, we must now determine the extent to which the exclusion is void. Nonanna argues the exclusion is invalid as to the full amount of liability coverage provided by the policy ($300,000). Cimarron contends its liability should be limited to $25,000, the minimum coverage required by SDCL 32–35–70. The trial court held the exclusion invalid as to the $25,000 statutory minimum, but valid and enforceable with respect to the excess coverage under the policy. We agree.

There is a split among the jurisdictions which have addressed this issue. The ma-

jority position holds such exclusions void only as to the minimum coverages required by statute. Thus, where the policy limits exceed the statutory minimum, *the insurer's liability is limited to the coverage required by statute. Arceneaux, supra; Stepho v. Allstate Ins. Co.*, 259 Ga. 475, 383 S.E.2d 887 (1989); *DeWitt, supra; Bishop, supra; State Farm Mut. v. Nationwide Mut.*, 307 Md. 631, 516 A.2d 586 (1986); *State Farm Mutual Auto. Ins. Co. v. Shelly*, 394 Mich. 448, 231 N.W.2d 641 (1975); *Estate of Neal, supra; State Farm Mut. Auto. Ins. v. Mastbaum*, 748 P.2d 1042 (Utah 1987); *Allstate Ins. Co. v. Wyoming Ins. Dept.*, 672 P.2d 810 (Wyo.1983). *See generally* 7 Am.Jur.2d *Automobile Insurance* § 30 (1980).

In contrast, a minority of jurisdictions hold that where the household exclusion is held invalid as violative of public policy, the limits of the insurer's liability are those provided by the policy, rather than the lesser limits required by statute. *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585 (Colo.1984); *State Farm Mut. Auto. Ins. Co. v. Wagamon*, 541 A.2d 557 (Del. 1988); *Kish v. Motor Club of America Insurance Company*, 108 N.J.Super. 405, 261 A.2d 662 (1970).

The South Dakota Legislature specifically addressed the matter of excess or additional insurance coverage in SDCL 32–35–75, which provides:

Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in addition to the coverage specified for a motor vehicle liability policy *and such excess or additional coverage shall not be subject to the provisions of this chapter.* With respect to a policy which grants such excess or additional coverage the term 'motor vehicle liability policy' shall apply only to that part of the coverage which is required by § 32–35–70 or 32–35–71. (Emphasis added.)

*By the statute's plain language,* excess coverage is not subject to the provisions of this state's statutes on financial responsibility of motorists! Therefore, we *must* follow the majority rule and hold that the insurer's liability is limited to the coverage required by statute. As clearly stated by the trial court in its Conclusion of Law V:

The clear legislative intent expressed by this statute is that an insurance company is free to provide liability coverage in excess of the mandatory limits now required by SDCL 32–35–70 and SDCL 32–35–113(1). However, the legislature, by enacting SDCL 32–35–75 *specifically stated that such additional coverage is not subject to the provisions of the financial responsibility act.* As a result, Defendant Nonanna A. Croyle cannot argue that the financial responsibility statute expresses any public policy with regard to this additional coverage. *In fact, such additional coverage is specifically excluded from the provisions of the financial responsibility act.* (Emphasis added.)

The insurance industry is highly regulated in South Dakota. There are extensive statutes and regulations prescribed and promulgated by the state legislature and insurance department. In *Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 884 (S.D.1984), this court stated the basic controlling constitutional theory:

While it may be elementary, it behooves us to acknowledge that as a result of constitutional provisions distributing the powers of government among three departments, the legislative, executive, and judicial, *courts have no legislative authority, and should avoid judicial legislation, a usurpation of legislative powers, or any entry into the legislative field.* Thus it has been said that whatever its opinion may be as to the wisdom of a statute or the necessity for further legislation, the duty of the court is to apply the law objectively as found, and not to revise it.

It is for the legislature to change the laws. This court has no authority to do so, despite results which may appear to be unjust. As stated earlier, the legislature has clearly spoken on this issue.

Therefore, we must adhere to the policy established, in clear and unambiguous lan-

guage, by the legislative branch of government.

## II.

Nonanna contends she is also entitled to underinsured motorist coverage. The underinsured motorist portion of the Cimarron policy excludes from coverage any vehicle "owned by or furnished or available for the regular use of you or any family member." Cimarron contends this language clearly exempts the insured vehicle from underinsured coverage and is not inconsistent with South Dakota public policy. The trial court denied Nonanna this coverage below. We agree.

SDCL 58–11–9.4 requires that all motor vehicle liability insurance policies contain underinsured motorist coverage in an amount equal to the bodily injury limits of the policy. SDCL 58–11–9.5 elucidates further:

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against. (Emphasis added.)

Cimarron argues that the above emphasized language of SDCL 58–11–9.5 is legislative recognition of the right of insurance companies to place conditions on underinsured motorist coverage. We agree. The terms of statutes are to be construed according to their plain and ordinary meaning. *Appeal of AT & T Information Systems*, 405 N.W.2d 24 (S.D. 1987); *Oahe Conservancy Subdistrict v.*

*Janklow*, 308 N.W.2d 559 (S.D.1981). The clear implication of this language is that underinsured motorist coverage may be subject to certain terms and conditions. *Dairyland Ins. Co. v. Finch*, 32 Ohio St.3d 360, 513 N.E.2d 1324 (1987). By its terms, Cimarron's policy excludes the *insured's vehicle* from underinsured motorist coverage. We affirm the trial court on this issue.

We have considered the other issues raised by Croyle and find them to be lacking in merit.

SABERS and AMUNDSON, JJ., concur.

WUEST and HENDERSON, JJ., concur in part and dissent in part.

WUEST, Justice (concurring in part and dissenting in part).

The majority decision is a great victory for the insurance companies, but a sad day for the people of South Dakota. In 1978, the guest statute was repealed by our legislature. The insurance companies responded with the household exclusion. This exclusion negates liability coverage for the insured to the people who are most often his passengers and most likely to be injured—his family.

If the insured is judgment proof, the injured members of the family are left without any recourse for their injuries. If the family exclusion clause is valid, a majority of South Dakotans do not have adequate liability coverage although they are paying for it.

The majority decision holds the family exclusion clause void up to $25,000.00. I agree. Where I disagree with the majority is limiting the void portions to $25,000.00. It should be the policy limits. If the exclusion is void, it is void. If it is dead it is dead. If an apple has a rotten spot, it is still a rotten apple.

The cases from other jurisdictions are split.[1] The cases supporting the majority

---

1. The majority position holds such exclusions void only as to the minimum coverages required by statute. Thus, where the policy limits exceed the statutory minimum, the insurer's liability is limited to the coverage required by statute. *See,*

*e.g., State Farm Mut. v. Nationwide Mut.*, 307 Md. 631, 516 A.2d 586 (1986); *State Farm Mut. Auto. Ins. Co. v. Mastbaum*, 748 P.2d 1042 (Utah 1987); *Stepho v. Allstate Ins. Co.*, 259 Ga. 475, 383 S.E.2d 887 (Ga.1989); *DeWitt v. Young*, 229

opinion reason parties are free to contract for coverage above the minimum required by law. The fallacy of that argument is: Who do you contract with when all the insurance companies have a family exclusion provision in their policies? [2] Mr. South Dakotan has to take it or leave it. The policies become contracts of adhesion which will be addressed later in this opinion.

The majority places a great deal of weight on the provisions of SDCL 32–35–75 to support their theory of limiting coverage to $25,000.00. All that statute means is liability/coverage may be more than $25,-000.00. I would adopt the so-called minority rule for South Dakota as the Cimarron policy household exclusion is void in its entirety and Cimarron should be liable up to the policy limits.

My opinion is bolstered by the trial court's determination, with which I agree, that the Cimarron policy is a contract of adhesion. SDCL 32–35–113 mandates every driver maintain some form of financial responsibility on his or her motor vehicle. For the majority of people, that means automobile liability insurance. I repeat, *the insurance agent who sold Croyle, Sr. his Cimarron policy testified all automobile insurance policies available in South Dakota contain household exclusions identical or substantially similar to the Cimarron policy.* This testimony has not been controverted.

The fact that insurance policies without household exclusions are unavailable in this state undercuts any assertion the parties are free to contract for coverage in excess of $25,000.00. *See Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wash.2d 203, 643 P.2d 441, 445 (1982). To say there is free-

dom to contract regarding coverage for household members is to ignore reality. The record is clear that South Dakotans are faced with a "take-it-or-leave-it" proposition when it comes to purchasing automobile insurance. Indeed,

> the 'take it or leave it' nature of obtaining automobile liability coverage, and the effect of the policy's [household] exclusion on third parties who are or may be ignorant of the insurance arrangements and unable or incompetent to contract for coverage for themselves, illustrates the fragility of any assertion that the terms of this or similar insurance policies truly are the product of conscious bargaining between the parties. The argument might be more credibly made were there evidence that the insureds had been, or traditionally are, offered the choice of including or excluding coverage for family members.

*Estep,* 103 N.M. at 109–110, 703 P.2d at 886–887.

I would find the Cimarron policy to be a contract of adhesion, and because our legislature has, as a practical matter, mandated automobile liability insurance, I would find the household exclusion violates public policy irrespective of SDCL ch. 32–35. *See Rozeboom v. Northwestern Bell Telephone Co.,* 358 N.W.2d 241 (S.D.1984); *Durham v. Ciba–Geigy Corp.,* 315 N.W.2d 696 (S.D. 1982); *State Farm Mut. Auto. Ins. Co. v. Mastbaum,* 748 P.2d 1042, 1045 (Utah 1987) (Durham, J., dissenting).

A rationale offered in support of household exclusions is the protection of insurers from fraudulent or collusive lawsuits among family members. *See, e.g., Farmers Ins. Exch. v. Call,* 712 P.2d 231 (Utah

---

Kan. 474, 625 P.2d 478 (1981); *State Farm Mut. Auto. Ins. Co. v. Shelly,* 394 Mich. 448, 231 N.W.2d 641 (1975); *Arceneaux v. State Farm Mut. Auto. Ins. Co.,* 113 Ariz. 216, 550 P.2d 87 (1976); *Estate of Neal v. Farmers Ins. Exchange,* 93 Nev. 348, 566 P.2d 81 (1977); *Allstate Ins. Co. v. Wyoming Ins. Dept.,* 672 P.2d 810 (Wyo.1983). *See generally* 7 Am.Jur.2d Automobile Insurance § 30 (1980).

A minority of jurisdictions hold that where the household exclusion is held invalid as violative of public policy, the limits of the insurer's liability are those provided by the policy, rather

than the lesser limits required by statute. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Wagamon,* 541 A.2d 557 (Del.1988); *Meyer v. State Farm Mut. Auto. Ins. Co.,* 689 P.2d 585 (Colo.1984). *See also Kish v. Motor Club of Am. Ins. Co.,* 108 N.J.Super. 405, 261 A.2d 662 (1970).

2. The insurance agent who sold Croyle, Sr. his Cimarron policy testified all automobile insurance policies available in South Dakota contain household exclusions identical or substantially similar to the Cimarron policy. ·

1985); *Wiscomb*, 97 Wash.2d 203, 643 P.2d 441; *State Farm Mut. Auto. Ins. Co. v. Traycik*, 86 Mich.App. 285, 272 N.W.2d 629 (1979). I would find this argument unpersuasive in this instance for the following reasons.

First, collusion and fraud are the exception rather than the rule, and thus, the exclusion far exceeds the evil it was designed to protect against. *Wiscomb*, 643 P.2d at 444.

> [T]he possibility of collusion exists to a certain extent in any case. Every day we depend on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that the courts are quite adequate for this task.

\* \* \* \* \* \*

> In addition, other safeguards exist to protect insurers against unscrupulous collusive households. Insurers conduct thorough investigations, require prompt notice of accidents, and function as specialists in their fields. They are not likely to be easy victims of fraudulent lawsuits. The insured is always represented by the insurance company, who will carefully represent the insurer's interest as well as the insured. Furthermore, most policies require cooperation from the insured and provide penalties for false statements.

*Call*, 712 P.2d at 235–36.

Second, this jurisdiction has rejected laws premised, in whole or in part, upon the collusion rationale. The common law doctrine of intraspousal immunity was rejected by statute and judicial decision years ago, *see* SDCL 25-2-15; *Scotvold v. Scotvold*, 68 S.D. 53, 298 N.W. 266 (1941), and South Dakota's Automobile Guest Statute, SDCL 32-34-1, was repealed in 1978, 1978 S.D.Laws ch. 240, § 1. Implicit in the rejection of these laws is recognition by our legislature that the collusion rationale is no longer adequate justification for prohibiting an entire class of persons from redress for personal injuries.

It is clear the Cimarron policy is a contract of adhesion, and under such circumstances, I would hold the household exclu-

sion imposed upon Croyle, Sr. void in its entirety as violative of public policy and reverse the trial court on that issue. *See Rozeboom*, 358 N.W.2d 241; *Durham*, 315 N.W.2d 696.

The practical result of the majority decision is to leave many South Dakota drivers exposed to liability if injuries to a family member exceeds damages of $25,000.00. Since the average person or his agent does not read the exclusions, those insureds with policy limits in excess of $25,000.00 are in for a surprise when a family member is injured—no coverage in excess of $25,-000.00.

Anybody who has purchased an automobile liability policy knows cost for coverage in excess of $25,000.00 is minimal. The expense of voiding the family exclusion clause in its entirety would cost very little.

I concur with the majority on the other issues.

HENDERSON, Justice (specially concurring in part; dissenting in part).

I.

I specially concur in approximately one-half of the majority opinion, i.e., declaring Cimarron's household exclusion in the liability portion of the policy invalid as being violative of this state's public policy.

II.

Joining our immediate past Chief Justice's dissent in toto on the balance of the majority opinion, I likewise dissent to limiting the family exclusion clause "void"—up to $25,000.00. Where is the magic in the figure $25,000 when discussing public policy?

Freedom to contract. For whom? Certainly not, as an example, for the rights of a little child (defenseless to the commercial word, maimed for life) who has had his or her rights of financial protection *contracted away*. Our Financial Responsibility Act was fostered to assure monetary protection and compensation for South Dakotans who suffer injuries through negligent, careless and reckless use of public highways—not

to take it away. Majority opinion would strip away and deny coverage to little children, spouses and family members of an insured. As the Supreme Court of Wisconsin observed: "The Safety Responsibility Law was designed to protect the third-party beneficiary, not the named insured." *Mueller v. American Indemnity Co.*, 19 Wis.2d 349, 120 N.W.2d 89, 90 (1963). In my opinion, the decision below capping coverage at $25,000, but void above that figure, is violative of public policy.

In balancing justice here, the public policy of providing monetary protection and comparison for all South Dakotans overrides any "freedom of contract" analysis. Therefore, I support the holdings in the minority jurisdictions, relying on the exact three cases cited by the majority opinion and Justice Wuest's position. *State Farm, Meyer,* and *Kish.* Essentially, the majority opinion is splitting hairs to support wrong (i.e., $25,000.00 is void; an amount above that is not void). For posterity, it should be mentioned that Nonanna has alleged brain injury. Allen Paul Croyle, Jr.'s driving killed another person, Jeanette St. Peter. Cimarron Insurance Company brought this declaratory judgment lawsuit to save its pocketbook. Cimarron is an inanimate creation of the law and has no sense for right or wrong, i.e., justice in this case. Nor is *its* conscience piqued; inanimate objects do not have a conscience. Humans, endowed by their creator, with a brain and emotional psyche, have a conscience. Humans care. In one election from a Supreme Court District, and then in one state-wide retention election, the people bequeathed me with the title "Justice." * I am supposed to concern myself with justice. As it stands, I see no ultimate justice in this case. I cannot join the writing of our present Chief Justice. In all due respect to our present Chief Justice, the majority opinion, in my opinion, creates injustice for the people of this state. This opinion has far-reaching consequences against

the rights of my fellow South Dakotans and thus I dissent on our present Chief Justice's position on the $25,000 "cap."

Nonanna Croyle is an innocent victim. She is entitled to protection under SDCL 32–35–70 which requires that:

An owner's policy of *liability insurance ... shall insure the person named therein and any other person* as insured, ... *against loss from* the *liability* imposed by law *for damages arising out of* the ownership, maintenance, or *use of the vehicle ....* (Emphasis added.)

In 1986, additionally, the South Dakota Legislature passed SDCL 32–35–113, which required that all owners and operators of motor vehicles must have liability insurance during the operation of a motor vehicle. This statute states in pertinent part:

Every driver or owner of a motor vehicle shall at all times maintain in force one of the forms of financial responsibility on the motor vehicle by one of the following methods:

(1) ... an owner's policy of liability insurance as provided in § 32–35–70[.]

In *Richard v. Fliflet*, 370 N.W.2d 528, 534 (N.D.1985), the Supreme Court of North Dakota expressed:

The *overriding purpose* of our financial responsibility law is to *protect innocent victims* of motor vehicle accidents from financial disaster. (Emphasis added.)

In *Rural Mutual Insurance Company v. Peterson*, 134 Wis.2d 165, 395 N.W.2d 776, 778 (1986) it was expressed:

Parties are at liberty to enter insurance contracts which specify the coverage afforded by the contract *as long as the contract terms do not contravene state law or public policy.* (Emphasis added.)

*Streich v. American Family Mutual Insurance Company*, 358 N.W.2d 396 (Minn. 1984), supports this same position. Con-

---

* Prior to this, the people of the Seventh Judicial Circuit elected me to the position of Circuit Court Judge where I served for four years. In South Dakota, a circuit judge is a judge of general jurisdiction with a panoply of trial power, encompassing presiding over jury trials. Hav-

ing been elected to the Circuit Court and then the Supreme Court (and retained in a statewide retention ballot), I am the last of this kind of Judicial Mohican on this Court. My identification is with the feelings, thoughts, and rights of the people.

cerned I am that the majority of my Brothers on this Court, in my opinion, have forsaken both the state law and public policy arguments which address the vital interests of the people of South Dakota, compared to the contractual position of a Kansas insurance corporation.

In addressing all of these statutes, trying to harmonize them for the public good and safety, let us examine two further statutes. SDCL 32–35–72 requires that a motor vehicle liability policy:

> [S]hall contain an agreement ... that insurance is provided ... in accordance with the coverage defined in this chapter as respects bodily injury ... and is subject to all the provisions of this chapter.

SDCL 32–35–74(4) states that:

> (4) The policy ... and any rider or endorsement which does not conflict with the provisions of this chapter shall constitute the entire contract between the parties.

Here, the insurance contract issued by the Kansas insurance corporation, Cimarron, clearly omitted coverage required by the language and policy expressed in SDCL 32–35–113 and 32–35–70. In South Dakota, my position is that automobile liability insurance is mandated; it is not just required as proof of financial responsibility. Where there are exclusion clauses which conflict with statutory requirements, as can be noted heretofore, they are invalid. *State Farm Mutual Auto. Insurance Co. v. Wagamon,* 541 A.2d 557, 560–61 (Del.1988).

Insurance corporations should not abuse our state law nor should these insurance corporations dictate public policy. Nor should they be permitted to enslave the people of South Dakota with contracts of adhesion, contracts by which, of their inherent nature, are against public policy. Realistically, Croyle's father had no "freedom of contract." Either he accepted the policy or he did not have insurance. He was confronted with the same dilemma as all South Dakotans: "Take it or leave it." And, under South Dakota law, he is mandated to have automobile liability insurance. If the insurance companies dictate the terms, it is adhesive.

We recognized contracts of adhesion in an insurance setting in *Cheney v. Metropolitan Life Ins. Co.,* 370 N.W.2d 569 (S.D. 1985) (Henderson, J., dissenting on other grounds). We are not plowing virgin ground now. I note that both parties briefed the issue as to the terms of the household exclusion. Cimarron cited to *Rozeboom,* addressing contracts that are unreasonable, harsh or oppressive; Cimarron sought to distinguish *Rozeboom.* Croyle also briefed contracts of adhesion. Thus, it is squarely before this Court. In keeping with my thesis heretofore articulated, the insurance policy before us is an adhesion contract. Cimarron's agent testified that Croyle's father would not be able to obtain an insurance policy without a Family Exclusion Clause. Croyle's father had no choice to include or exclude coverage for family members. "No choice" reflects no conscious bargaining between the parties. Read a good discussion of this point in *Estep v. State Farm Mutual Automobile Co.,* 103 N.M. 105, 703 P.2d 882, 886–87 (1985). Wives and children are, essentially, ordinarily ignorant of the insurance provisions or incompetent to contract.

And so, Justice Wuest and myself are in the minority. So what? Thanks to the discoveries of Galileo, his successors found themselves in a New Earth surrounded by New Heavens. Walt Whitman sang the song of the "Open Road." Many legal minds have different viewpoints on the very subject before us. I am no pioneer on the issue at hand. In *Green v. Clinic Masters, Inc.,* 272 N.W.2d 813, 815–16 (S.D. 1978), adhesion contracts were recognized by some of the former gentlemen who served on this Court and have now gone on to their heavenly reward. Back in 1971, this Court decided the *Durham* case, cited by Justice Wuest. Same story. Adhesion contracts recognized in South Dakota. Thank God for creative men; men who dare to be different. As I wrote in *Rozeboom,* at 246:

> We fully appreciate that our viewpoint is not the traditional viewpoint in this Nation. The righteousness of a cause is often solitary and perhaps time will bet-

ter serve our pronouncement. In a democratic society, we persevere under a system of laws where change is inevitable. Change can be simple, good, and effectual. Here, we associate with change in simple fairness and opposed to basic oppression.

Here, under the majority rule, a child under the age of emancipation cannot sue his parent for parental negligence. Maimed for life, he is left defenseless to the commercial world. Simple fairness tells me that this should not be. This case accords us an opportunity to protect individuals within a family who reside with us. I would side with them, rather than the Kansas insurance corporation whose own agent, under oath, impales it upon a cross of adhesion. With our ex-Chief Justice, I would drive the nails.