2005 SD 29

**Scott GLOE, Plaintiff and Appellant,**

v.

**IOWA MUTUAL INSURANCE COMPANY, Defendant and Appellee.**

Nos. 23088, 23095.

Supreme Court of South Dakota.

Argued Aug. 24, 2004.

Decided March 2, 2005.

Nancy J. Turbak, Watertown, SD, for plaintiff and appellant.

Acie W. Matthews, Sioux Falls, SD, for defendant and appellee.

ZINTER, Justice.

[¶ 1.] Scott Gloe's parents were struck and killed by an automobile. Gloe's

parents did not reside in his household, they were not insured under his auto policy, and neither Gloe nor his covered automobile was involved in the accident. Nevertheless, Gloe asserted a wrongful death claim under the underinsured motorist (UIM) provision of his auto policy with Iowa Mutual. The trial court entered a declaratory judgment determining that there was no UIM coverage for Gloe's claim, and he appeals. We affirm because (1) Iowa Mutual's policy only provided UIM coverage for insureds who suffer bodily injury or death, (2) Gloe suffered no bodily injury or death, (3) his parents were not insureds under his policy, and (4) South Dakota's statutes do not mandate UIM coverage for pecuniary losses insureds may suffer as a result of the death of third parties who have no connection with the insured's policy.

### Facts and Procedural History

[¶ 2.] On September 1, 2001, pedestrians Larry and Verna Mae Gloe were struck and killed in an auto accident. Pursuant to SDCL 21–5–1,[1] Scott Gloe, their son, was appointed as the personal representative to pursue wrongful death claims on behalf of the decedents' statutory beneficiaries.[2]

[¶ 3.] Two insurers provided liability coverage for this accident. American Family Insurance Company insured the automobile, with liability limits of $25,000 per person. Farmer's Insurance Group insured the driver, with liability limits of $100,000 per person. Each company paid its limits: $125,000 was paid for the wrongful death claims arising from Larry Gloe's death, and $125,000 was paid for the wrongful death claims arising from the death of Verna Mae Gloe.[3] These sums were paid in return for a release of the tortfeasor and the liability carriers. Scott Gloe, his brother Michael Gloe,[4] and their sister Karen Nelson[5] received the wrongful death proceeds.

[¶ 4.] After settling with the liability carriers, Scott Gloe brought this declarato-

---

1. SDCL 21–5–1 provides:

   Whenever the death or injury of a person, including an unborn child, shall be caused by a wrongful act, neglect, or default, and the act, neglect, or default is such as would have entitled the party injured to maintain an action and recover damages in respect thereto, if death had not ensued, then and in every such case, the corporation which, or the person who, would have been liable, if death had not ensued, or the personal representative of the estate of such person as such personal representative, shall be liable, to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony; and when the action is against such personal representative, the damages recovered shall be a valid claim against the estate of such deceased person. However, an action under this section involving an unborn child shall be for the exclusive benefit of the mother or the lawfully married parents of the unborn child.

2. SDCL 21–5–5 provides:
   Every action for wrongful death shall be for the exclusive benefit of the wife or husband and children, or if there be neither of them, then of the parents and next of kin of the person whose death shall be so caused; and it shall be brought in the name of the personal representative of the deceased person.

3. In rendering our decision in *Nelson v. Farmers Mutual Insurance Co. of Nebraska*, 2004 SD 86, 684 N.W.2d 74, the amount of UIM coverage available under Nelson's policy was $100,000. The portion of the $125,000 liability insurance proceeds she received was set off against that amount.

4. Michael Gloe also asserted a UIM claim under his parent's auto policy. The set-off calculation was in dispute. We resolved that matter in *Gloe v. Union Insurance Company*, 2005 SD 30, 694 N.W.2d 252.

5. Karen Nelson also asserted a UIM claim under her auto policy. In *Nelson*, 2004 SD 86, ¶ 3, 684 N.W.2d at 75–76, Karen's UIM

ry action seeking to establish UIM coverage under his policy with Iowa Mutual. Gloe's claim was asserted in his individual capacity, and he sought to recover additional uncompensated wrongful death damages. Under South Dakota law, those damages are limited to Gloe's pecuniary loss caused by the death of his parents.

[¶ 5.] Gloe's policy with Iowa Mutual provided UIM benefits, with limits of $250,000 per person and $500,000 per occurrence. Gloe conceded that if Iowa Mutual's policy provided UIM coverage, Iowa Mutual was entitled to set-off the amount that he received from the two liability insurers. However, Iowa Mutual denied that its policy provided any UIM coverage. Iowa Mutual's denial was based upon a policy endorsement that only provided UIM coverage for "bodily injury or death" sustained by an "insured." Because Gloe sustained no bodily injury or death in this accident, and because Gloe's parents were not insureds under his policy, Iowa Mutual contended that its UIM coverage was unavailable.

[¶ 6.] Gloe acknowledged the policy language, but argued that the provision requiring "bodily injury or death" by an "insured" was incompatible with South Dakota's law requiring UIM coverage. The trial court disagreed. Gloe now appeals, raising the following issue:

1. Whether South Dakota statutes preclude an insurer from restricting UIM coverage to bodily injury or death sustained by an insured.

By notice of review, Iowa Mutual raises the following issues:

2. Whether Gloe is a real party in interest with an individual claim for damages after he settled the wrong-

coverage was conceded. Therefore, we only decided the extent of Farmers Mutual's UIM

ful death claims on behalf of the wrongful death beneficiaries.

3. Whether the personal representative's release of the tortfeasor, precludes Gloe's individual claim.

**Analysis and Decision**

[¶ 7.] "We review declaratory judgments as we would any other judgment or order." *Nelson v. Farmers Mutual Insurance Co. of Nebraska*, 2004 SD 86, ¶ 5, 684 N.W.2d 74, 76 (citing SDCL 21–24–13; *Parks v. Cooper*, 2004 SD 27, ¶ 20, 676 N.W.2d 823, 828–29). In this case, our review involves a question of law regarding the interpretation of statutes and their application to insurance contracts. That review is de novo. *See Id.* (citing *Roden v. General Casualty*, 2003 SD 130, ¶ 6, 671 N.W.2d 622, 625); *Jones v. AIU Ins. Co.*, 51 P.3d 1044, 1045 (Colo. Ct.App.2001) (stating that whether a statute mandates coverage is a matter of statutory interpretation subject to de novo review).

*South Dakota's Statutes Do Not Man-date UIM Coverage for Wrongful Death Damages Arising Out Of the Death of a Third Party Who Has No Relationship With the Insurance Policy.*

[¶ 8.] "In South Dakota, automobile insurance providers must provide underinsured motorist coverage in their policies." *Nelson*, 2004 SD 86, ¶ 8, 684 N.W.2d at 77 (citing SDCL 58–11–9.4). In *Nelson*, we noted that "courts in other jurisdictions are split on the propriety of allowing an insured, pursuant to statutorily required underinsured motorist policy provision[s], to recover damages arising from bodily injury or death of a third person." *Id.* ¶ 7. However, we did not "address the wisdom or public policy of allowing such suits"

limits.

under our statutes because the insurer in that case conceded coverage. *Id.*

■ [¶ 9.] The policy language at issue here provides coverage for damages an insured is "legally entitled to recover"[6] from the owner or operator of an underinsured motor vehicle because of "bodily injury or death" sustained by "an insured." The policy provides:

> We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury:'
> 1. Sustained by an 'insured,' and
> 2. Caused by an accident.

The policy defines 'bodily injury' as bodily harm, sickness or disease, including death, that results. It defines insureds as:

> 1. You or any 'family member.'
> 2. Any other person 'occupying' 'your covered auto.'
> 3. Any person for damages that person is entitled to recover because of 'bodily injury' to which this coverage applies sustained by a person described in 1. or 2. above.
> 'Family member' means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

■ [¶ 10.] Because Gloe's parents were not residents of Gloe's household and were not occupants of a covered auto, they were not insureds under this policy language. Furthermore, the insured, Scott Gloe, suffered no bodily injury or death in the accident. Therefore, no UIM coverage was available under the policy. Gloe, however, contends that this policy provision violates the public policy of the UIM and uninsured (UM) statutes of this State.

■ [¶ 11.] "Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject." *Martinmaas v. Engelmann,* 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611. Furthermore, because of the similarity of subject and purpose of UM and UIM statutes and coverage, most of the decisions considering this issue construe UM and UIM claims, policies, and statutory language interchangeably. This is understandable because, as was noted in *Jones,* 51 P.3d at 1045, construing UM and UIM statutes separately "would create the anomalous situation where benefits for the wrongful death of an uninsured person were not required if the motorist causing death was uninsured, but required if the motorist was underinsured." Therefore, we construe our UM and UIM statutes together.[7] We also apply the case law considering UM and UIM coverage interchangeably.

6. Iowa Mutual argues that Gloe is not "legally entitled to recover" because, under SDCL 21–5–5, an action for wrongful death must be brought by the personal representative. In the recent case of *In re Estate of Edna Jane Howe,* 2004 SD 118, ¶¶ 25–26, 689 N.W.2d 22, 29, this Court clarified that only the personal representative may bring a wrongful death action, and it must be brought on behalf of all beneficiaries. However, both *Howe* and the case that *Howe* interpreted (*Sander v. Geib, Elston, Frost Professional Ass'n,* 506 N.W.2d 107 (S.D.1993)) involved wrongful death actions against tortfeasors. In the present case, Iowa Mutual is not being sued as a tortfeasor. It is being sued on contract for benefits allegedly due under a policy of insurance it issued to Gloe. Because this is a declaratory action to determine the extent of Gloe's contractual rights under an insurance contract, *Howe* is inapposite.

7. Even though the UM and UIM statutes were passed nine years apart, we do not believe the slight difference in language of the statutes suggests that the Legislature had different purposes and goals in enacting each provision. Therefore, we do not believe that the use of more general language in the UIM statutes evinces an intent to require UIM cov-

[¶ 12.] Although the essence of the South Dakota statutes is quite similar, the UM provision is the most specific in declaring who is intended to be protected by the mandated coverage. It provides that coverage is required for the protection of *persons insured* under the policy. It also suggests that coverage was intended for the bodily *injury or death* of the *insured:*

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state ... unless coverage is provided therein or supplemental thereto in limits *for bodily injury or death* equal to the coverage provided by such policy for bodily injury and death, *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required by this section may not exceed the limits of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, unless additional coverage is requested by the insured....

SDCL 58–11–9 (emphasis added).

[¶ 13.] The complementary UIM statutes fail to as specifically address the question of who is intended to be protected by the mandated coverage and whether bodily injury or death of an insured was contemplated. Instead, they simply refer to coverage for "bodily injury to or death of [a] person" and "damages as its insured may recover on account of bodily injury or death arising out of an automobile accident...."

> No motor vehicle liability policy of insurance may be issued or delivered in this state with respect to any motor vehicle registered or principally garaged in this state ... unless underinsured motorist coverage is provided therein at a face amount equal to the bodily injury limits of the policy. However, the coverage required by this section may not exceed the limits of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, unless additional coverage is requested by the insured....

SDCL 58–11–9.4.

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

SDCL 58–11–9.5.

[¶ 14.] Gloe disregards the language in SDCL 58–11–9 that indicates coverage is

erage in policies where no UM coverage is    required.

intended for the protection of the *insured* for bodily injury or death. Instead, he focuses only upon references generally referring to legal entitlement to recover or coverage for "uncompensated damages as its *insured may recover*" as a result of "bodily injury or death." SDCL 58–11–9 and SDCL 58–11–9.5 (emphasis added). Because Gloe is legally entitled to recover wrongful death damages as a result of the death of his parents, he asserts that these general references *are broad enough* to mandate coverage for the uncompensated pecuniary loss that he may suffer as a result of his parents' death in an automobile accident that had no relationship to his policy. Given his *general* right of recovery for the wrongful death of his parents, Gloe argues that the UIM statutes should "not concern [themselves] with an *insured's bodily injury*," and therefore, Iowa Mutual may not limit UIM coverage to wrongful death or bodily injury sustained by an *insured*.

[¶ 15.] Iowa Mutual responds by pointing out that SDCL 58–11–9.5 specifically provides that UIM coverage is *subject to* an insurer's terms and conditions. Iowa Mutual further points out that this Court has recognized the "right of insurance companies to place conditions on underinsured motorist coverage." *See Cimarron Ins. Co. v. Croyle*, 479 N.W.2d 881, 886 (S.D.1992) (superseded on other grounds by SDCL 32–35–70) (permitting an insurer to place a condition on coverage excluding an insured's vehicle from UIM coverage). Iowa Mutual concludes that its policy provision limiting coverage to death or bodily injury of an insured is valid as a "term" or "condition" of its policy.

[¶ 16.] However, the "subject to the terms and conditions" language of SDCL 58–11–9.5 was not intended to permit any restriction an insurer may wish to create. It was only intended to allow limitations on coverage to the extent that they do not violate the public policy expressed in the statutes. We have specifically stated that "the conditions and limitations imposed by the insurance company must be consistent with public policy...." *Phen v. Progressive Northern Ins. Co.*, 2003 SD 133, ¶ 6, 672 N.W.2d 52, 54. On the other hand, "[p]olicy language ... is not *automatically* void as against public policy simply because it narrows the circumstances under which coverage applies." *London v. Farmers Ins. Co. Inc.*, 63 P.3d 552, 555 (Okla.Civ.App. 2002) (considering a similar UM dispute). *See also, Farmers Insurance Exchange v. Chacon*, 939 P.2d 517, 520 (Colo.Ct.App.1997) (considering a limitation on UM coverage and stating that "a policy term is not void as against public policy simply because it narrows the circumstances under which coverage applies"). This Court has concluded that some restrictions violate public policy and some do not.[8] Therefore, the "subject to" language does not automatically resolve ·this matter, and we must return to the ultimate question whether the Iowa Mutual language is prohibited by the public policy of this state.

[¶ 17.] The public policy of this state is set forth in its statutes and

---

8. Our other cases discussing public policy violations include: *DeSmet Ins. Co. of South Dakota v. Gibson*, 1996 SD 102, ¶ 6, 552 N.W.2d 98–99, 100 (holding that a resident family member's exclusion was consistent with public policy); *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 757 (S.D. 1994) (holding that a policy provision purporting to reduce underinsured motorist coverage by workers' compensation benefits was void as a matter of public policy); *Kremer v. American Family Mut. Ins. Co.*, 501 N.W.2d 765, 768 (S.D.1993) (noting that it is against public policy to preclude a court determination of fault and damage in a suit against an uninsured motorist).

cases. *American Family Mut. Ins. Co. v. Merrill*, 454 N.W.2d 555, 559 (S.D.1990) (citations omitted). Most significant to this appeal, our cases have noted that the purpose of UM/UIM coverage is to protect the *insured* party *who is injured* in an automobile accident by the negligence of an uninsured/underinsured motorist:

> The purpose of uninsured [and therefore underinsured] motorist statutes is to provide the same insurance protection to the *insured party* who is *injured by* an Uninsured [or Underinsured] or unknown *motorist* that *would have been available to him had he* been *injured* as a result of the *negligence of a motorist* covered by the minimum amount of liability insurance.

*Clark v. Regent Ins. Co.*, 270 N.W.2d 26, 29 (S.D.1978) (emphasis added); *Nickerson v. American States Ins.*, 2000 SD 121, ¶ 15, 616 N.W.2d 468, 472 n. 4. Thus, when the purpose expressed in *Clark* (protecting the insured party who is injured by another motorist) is considered with the purpose expressed in SDCL 58–11–9 (protecting persons insured for bodily injury or death), we believe that the Legislature intended to mandate coverage for the protection of the *insured* for the *insured's bodily injuries or death* caused by the negligence of an uninsured/underinsured motorist.

[¶ 18.] We do not, however, believe that UM/UIM coverage was mandated for the consequential losses a wrongful death beneficiary incurs simply because that beneficiary has an auto policy and the decedent happens to be a relative for which the beneficiary is legally entitled to maintain a wrongful death action. As the court in *Livingston v. Omaha Property & Cas. Ins. Co.*, stated:

> [T]o accept plaintiff's interpretation would permit plaintiff to recover under her uninsured motorist policy for the death of any person from whom she is legally entitled to bring a claim under the wrongful death statute, such as the death of her children, any lineal descendant, her brothers and sisters, her parents, or any other descendant. It would provide coverage by plaintiff's insurance company for hazards associated with the operation of the vehicles of all of these individuals, none of whom are insured under her policy.

927 S.W.2d 444, 446 (Mo.Ct.App.1996) (citing *Elder v. Metropolitan Prop. and Cas. Co.*, 851 S.W.2d 557, 562 (Mo.Ct.App. 1993)).

[¶ 19.] Thus, most courts have concluded that coverage is not mandated where the cause of action is for wrongful death of a person "who was in no way connected to [the insured's] automobile insurance policy, who did not reside in [the insured's] household, nor who, if had survived the accident, would have had any right of recovery under [the insured's] policy." *Temple v. Travelers Indemnity Co.*, 2000 WL 33113814 *5 (Del.Super.Ct. 2000) (unpublished opinion) *affd.*, 782 A.2d 267, (Del. Supr.2001). *See also Jones*, 51 P.3d at 1045 (stating that allowing recovery of UIM benefits for the death of an individual who was not insured under the insured's auto policy, did not reside in the insured's household, and would have had no right of recovery under the insurance policy if he had survived, would be contrary to common sense); *Lafleur v. Fidelity Cas. Co. of New York*, 385 So.2d 1241, 1245 (La.Ct. App.1980) (holding the legislature did not intend UM statute to require UM policy to cover wrongful death of third persons); *Spurlock v. Prudential Ins. Co.*, 448 So.2d 218, 219 (La.Ct.App.1984) (holding the Legislature never intended "to afford coverage for what an insured may be legally entitled to recover as his 'wrongful death' damages, sustained because of some third

party's death"); *Allstate Ins. Co. v. Hammonds,* 72 Wash.App. 664, 865 P.2d 560, 563 (1994) (holding, under language that did not explicitly require injuries by the insured, that one must "engage in a strained and forced interpretation of the ... policy to conclude that it provides compensation for an insured household member for injuries to non-resident, uninsured relatives"). Finally, and probably most pertinent to this appeal, is the Georgia decision construing broad language that, like the South Dakota UIM statute, generally referred to coverage for "all sums which said insured shall legally be entitled to recover as damages." The Georgia court concluded that such broad language was "not ... enacted ... with the intention of requiring insurance companies to pay damages for the death of a person not insured under the policy in question." *Atlanta Cas. Co. v. Gordon,* 266 Ga.App. 666, 598 S.E.2d 70, 71 (2004).

[¶ 20.] Gloe, however, argues that we should not follow this clear weight of authority because it would write the word "death" out of the UM/UIM statutes. To support this argument, Gloe points out that our statutes specifically allow recovery for wrongful *death* as well as bodily injury, but an insured decedent cannot recover for his own death under South Dakota law. *See* SDCL 21-5-5 (wrongful death action is for the exclusive benefit of the wife or husband and children, or if there be none of them, then the parents and next of kin of the decedent). Because an insured decedent cannot recover for his or her own wrongful death, Gloe contends Iowa Mutual's endorsement effectively writes out the right of recovery for "death," even though that word is repeatedly used in the statutes.

[¶ 21.] However, Gloe fails to recognize that the Legislature included the word "death" to cover other wrongful death claims. Although the majority rule does not contemplate coverage for the wrongful death of third parties, wrongful death claims are covered if the person killed is an insured. Thus, the word "death" has meaning in the statute because, while Gloe may not recover under his policy for the death of non-insured relatives, UIM coverage is provided for the wrongful death of Gloe's family household members who suffer death at the hands of an underinsured motorist because they are insureds. Likewise, Gloe's family household members have UM/UIM coverage for his wrongful death at the hands of an uninsured or underinsured motorist. And finally, any other person who has a right to recover because of *an insured's* death has coverage. They are afforded UIM coverage because paragraph three of the endorsement at issue specifically makes them insureds. That endorsement provides that insureds include "[a]ny person for damages that person is entitled to recover because of 'bodily injury [or death]' to which this coverage applies sustained by [an insured]." *See supra* ¶ 9. For these reasons, the word "death" is not written out of the statute. Rather, the term has significant effect because the named insured, his family household members, and any other person who has a right to recover for wrongful death are all afforded UIM coverage for the wrongful death of an insured.

[¶ 22.] Other states recognize this UIM death benefit. Thus, the word "death" has meaning because "coverage is intended to provide indemnity for damages *resulting from an insured's wrongful death* payable" to those persons entitled to bring a wrongful death action. *Livingston,* 927 S.W.2d at 446 (emphasis added). *See also Farmers Ins. Exchange,* 939 P.2d at 521. Stated another way, the word death has meaning because when it comes to wrongful death claims "the legislature contem-

plated that the survivors of a person killed in an accident with an uninsured motorist would pursue a claim under the *decedent's* uninsured motorist coverage, rather than the survivor's policy." *Livingston*, 927 S.W.2d at 446.

[¶ 23.] Gloe's argument is also fundamentally flawed because, as Florida has noted, he incorrectly focuses solely upon the fact that *he* was an *insured* under his UIM policy, when the correct focus should be whether the person who suffered bodily injury or death had UM (or UIM) coverage. *Valiant Ins. Co. v. Webster*, 567 So.2d 408, 410 (Fla.1990) (disapproved on other grounds). However, when the question correctly focuses on whether the party injured in an automobile accident had UM/UIM coverage, the weight of authority concludes that the "statute does not require coverage for anyone who may be entitled to recover consequential damages as a survivor under the wrongful death statute when the decedent himself had neither liability nor uninsured motorist coverage under the policy." *Id.* at 411.

[¶ 24.] Gloe also notes that Iowa, Maryland, Nebraska, and Ohio have all concluded that coverage is afforded. The Iowa Supreme Court determined that because their UM statute did not require bodily injury to the insured, a wife could recover for her non-insured husband. *Hinners v. Pekin Ins. Co.*, 431 N.W.2d 345 (Iowa 1988). That court reached the same result in a case involving UIM coverage in *Wetherbee v. Economy Fire & Cas. Co.*, 508 N.W.2d 657 (Iowa 1993). Maryland concluded that it would be contrary to the broad purpose of their uninsured motorist law to restrict coverage to cases involving damages arising from death sustained by an insured. *Forbes v. Harleysville Mut. Ins. Co.*, 322 Md. 689, 589 A.2d 944 (1991). Nebraska similarly held that an insured

may recover wrongful death damages arising from the death of a non-insured person. *State Farm Mut. Auto. Ins. Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789 (1971). Finally, Ohio held that it was contrary to their law to restrict coverage to bodily injury sustained by an insured. *Sexton v. State Farm Mut. Auto. Ins. Co.*, 69 Ohio St.2d 431, 433 N.E.2d 555 (1982).

[¶ 25.] However, in reaction to this minority interpretation, all but one of these state's respective legislatures corrected each court's interpretation and clarified that such coverage was not intended. In Ohio, the legislature amended their UIM statute to specifically overrule *Sexton* so that policies may limit coverage to bodily injury suffered by an insured. *Atlanta Cas. Co.*, 598 S.E.2d at 72 (citing *Beagle v. Walden*, 78 Ohio St.3d 59, 676 N.E.2d 506 (1997)). Similarly, *Forbes* is no longer the law in Maryland. That legislature corrected the court's interpretation and clarified its statute to only "apply to, and require UIM coverage for, a wrongful death claim where the deceased is an 'insured.'" *Id.* (citing *Nickolson v. Nationwide Mut. Ins. Co.*, 2001 WL 985099 (Del.Super.Ct. 2001)). Finally, as with the other states, the Nebraska legislature amended its UM statutes to disallow recovery in these cases. *London*, 63 P.3d at 556 n. 1.

[¶ 26.] Thus, the vast majority of courts that have considered this issue have "uniformly interpreted their respective statutes as providing coverage only for injuries to those insured under the policy." *Atlanta Cas. Co.*, 598 S.E.2d at 72. *Atlanta Cas. Co.* notes that the states that have upheld the insurance provision at issue here include: Alaska, Arizona, California, Colorado, Delaware, Florida, Illinois, Indiana, Louisiana, Mississippi, Missouri, Oklahoma, Rhode Island, Washington, and

Wisconsin. *Id.* at 72–73.[9] And most significantly, this majority interpretation has

been adopted whether or not the UM/UIM statute construed specifically referred to

**9.** *See: Delancey v. State Farm Mut. Auto. Ins. Co.*, 918 F.2d 491, 494 (5thCir.1990) (interpreting Mississippi UM statute that provided coverage to "the insured [for] all sums which he shall be legally entitled to recover as damages for bodily injury or death ..."); *Bartning v. State Farm Fire & Cas.*, 164 Ariz. 370, 793 P.2d 127, 128–129 (Ct.App.1990) (construing UM statute providing coverage "for the protection of persons insured who are legally entitled to recover damages ... because of bodily injury ... including death, resulting therefrom ..."); *Bakken v. State Farm Mut. Auto. Ins. Co.*, 139 Ariz. 296, 678 P.2d 481, 485 (Ct.App.1983) (construing UM statute that provided coverage "for the protection of persons insured [thereunder] who are legally entitled to recover damages ... because of bodily injury ... including death, resulting therefrom."); *Smith v. Royal Ins. Co. of America*, 186 Cal.App.3d 239, 230 Cal. Rptr. 495, 496 (1986) (interpreting UM statute that provided coverage "insuring the insured ... for all sums ... [one is] legally entitled to recover as damages for bodily injury or wrongful death ..."); *Farmers Ins. Exchange v. Chacon*, 939 P.2d 517, 520 (Colo.Ct. App.1997) (interpreting UM statute providing coverage "for the protection of persons insured thereunder who are legally entitled to recover damages ... because of bodily injury ... including death, resulting therefrom ..."); *Temple v. Travelers Indemnity Co.*, 2000 WL 33113814, *4 (Del.Super.Ct. 2000) (unpublished opinion) (interpreting UM/UIM statute that provided coverage "for the protection of persons insured thereunder who are legally entitled to recover damages ... for bodily injury ... including death ..."); *Valiant Ins. Co. v. Webster*, 567 So.2d 408, 409–410 (Fla.1990) (disapproved on other grounds) (interpreting UM statute providing coverage "for the protection of persons insured thereunder who are legally entitled to recover damages ... because of bodily injury ... including death, resulting therefrom"); *State Farm Mut. Auto. Ins. Co. v. George*, 326 Ill.App.3d 1065, 261 Ill.Dec. 236, 762 N.E.2d 1163, 1165 (2002) (construing UM statute providing coverage "for the protection of persons insured who are legally entitled to recover damages ... because of bodily injury ... including death, resulting therefrom"); *Ivey v. Massachusetts Bay Ins. Co.*, 569 N.E.2d 692, 694 (Ind.Ct.App.1991) (construing UM statute

that provided coverage "for the protection of the insured who is legally entitled to recover damages ... because of bodily injury resulting therefrom"); *Spurlock v. Prudential Ins. Co.*, 448 So.2d 218, 219 (La.Ct.App.1984) (stating that the UM policy claim must be based upon bodily injury to an insured and that because the parties had stipulated that the decedent was not an insured under the policy's terms, it affirmed the grant of summary judgment denying coverage); *Lafleur v. Fidelity & Cas. Co. of New York*, 385 So.2d 1241, 1244 (La.Ct.App.1980) (construing UM statute that provided coverage "for the protection of persons insured thereunder, who are legally entitled to recover damages ... because of bodily injury ... including death, resulting therefrom ..."); *Gillespie v. Southern Farm Bureau Cas. Ins. Co.*, 343 So.2d 467, 469–470 (Miss.1977) (interpreting UM statute that provided coverage to the insured for "all sums which he shall be legally entitled to recover as damages for bodily injury or death ..."); *Livingston v. Omaha Property & Cas. Ins. Co.*, 927 S.W.2d 444, 445 (Mo.Ct.App. 1996) (construing UM statute that provided coverage "for the protection of persons insured thereunder who are legally entitled to recover damages ... because of bodily injury ... including death, resulting therefrom"); *London v. Farmers Ins. Co.*, 63 P.3d 552, 554 (Okla.Civ.App. 2002) (interpreting UM statute providing coverage "for the protection of persons insured thereunder who are legally entitled to recover damages ... because of bodily injury ... including death resulting therefrom ..."); *Terilli v. Nationwide Mut. Ins. Co.*, 641 A.2d 1321, 1322 (R.I.1994) (interpreting an insurance policy providing UM coverage that provided compensation for damages "because of bodily injury to an insured" and denying coverage because the injured person was not an insured under the policy); *Allstate Ins. Co. v. Hammonds*, 72 Wash.App. 664, 865 P.2d 560, 563 (1994) (construing UIM statute providing coverage "for the protection of persons insured thereunder who are legally entitled to recover damages ... because of bodily injury, death ... resulting therefrom ..."); *Ledman v. State Farm Mut. Auto. Ins. Co.*, 230 Wis.2d 56, 601 N.W.2d 312, 316 (Ct.App.1999) (interpreting a UM policy and concluding that "the only reasonable reading is that for a vehicle to be uninsured, it must have caused bodily injury to an insured.").

coverage for bodily injury or death of the insured. The majority of these cases interpreted statutes that, like ours, simply referred to coverage for one "legally entitled to recover" [10] based on bodily injury or death.

■■■ [¶ 27.] Because we reiterate that the purpose of these statutes is to protect the *insured* party *who is injured in an accident,* we agree with the reasoning of the clear majority of courts that have found no mandated UM or UIM coverage for the wrongful death of one not insured under the claimant's policy. We also do so because "[w]hile uninsured [and underinsured] motorist coverage is to be given a liberal interpretation, coverage should not be created where there is none." *Livingston,* 927 S.W.2d at 446 (citing *Elder,* 851 S.W.2d at 562). Therefore, mandating UIM coverage for Gloe would result in an extension of coverage "for a decedent who is not an insured under the claimant's policy. . . ." *London,* 63 P.3d at 556. *See also Farmers Ins. Exchange,* 939 P.2d 517.

[¶ 28.] We finally note that mandating coverage for wrongful death in this case would require insurance coverage for Gloe's parents' deaths even though neither Gloe nor his parents would have had any coverage had his parents survived with serious uncompensated injuries. There would be no coverage because Larry and Verna Mae were not insureds and Scott Gloe has no right of recovery for his parents' personal injuries. Consequently, Gloe's construction of the statutes would create the anomalous result that UIM coverage would be available if the victim of the accident died, but unavailable if the victim survived and sustained substantial uncompensated damages. The legislature could not have intended that result.

■■■ [¶ 29.] Because Gloe's parents were not insureds and did not have UIM coverage under this policy, there could have been no recovery had they been injured, instead of being killed. Furthermore, although Gloe was an insured, he did not suffer any bodily injury and he had no involvement in the accident. Yet, after settling the wrongful death action for the death of his parents, he sought to recover further pecuniary loss under his automobile policy only because the decedents hap-

---

10. The dissent interprets this language (*"legally entitled* to recover for *a death* caused by an underinsured tortfeasor"*) to include a public policy *mandating* UIM coverage for the wrongful death of third parties. *Infra* ¶¶ 34, 35, and 37 (emphasis added). The dissent asserts that this is "plain language" contemplating "an insured's recovery on a wrongful death claim," even though the death involves a noninsured third party who has no connection whatsoever with the automobile policy claimed against. *Infra* ¶ 37. The *defect in* the dissent's reasoning is that neither this clause nor any other clause in any of the relevant statutes explicitly says that UIM coverage is *mandated* for wrongful death benefits arising from the death of *noninsured third parties* who have no relationship with the automobile policy. Consequently, while the language may be "conceivably" broad enough to fashion an argument in favor of coverage, it is certainly not "plain language" that ex-

plicitly mandates UIM coverage for the death of every conceivable heir at law for which an insured is entitled to assert a wrongful death claim. If it were so "plainly" mandated, there would not have been this multitude of decisions interpreting the same or similar clauses.

The dissent finds it unnecessary to even consider this myriad of decisions from all other states interpreting the same or similar clauses. The dissent does so by again reading the clause "legally *entitled to recover damages* for . . . *death"* to "unambiguously" mandate wrongful death coverage for third parties who have no connection with the policy. *See infra* ¶ 38. However, the dissent fails to acknowledge that many of these other courts considered analogous, if not identical, language. The dissent has certainly not demonstrated that the South Dakota statutes are sufficiently unique that all other cases on the subject are irrelevant. *See supra* ¶¶ 18, 19, 26 and n. 9.

pen to be relatives covered by a wrongful death statute. We do not believe the South Dakota statutes were intended to mandate UIM coverage for such consequential losses. Instead, we agree that such statutes do "not require coverage for anyone who may be entitled to recover consequential damages as a survivor under the wrongful death statute when the decedent himself had neither liability nor uninsured [or underinsured] motorist coverage under the policy." *Valiant*, 567 So.2d at 411.

[¶ 30.] In light of the disposition of this issue, we need not reach the other issues raised in Iowa Mutual's notice of review.

[¶ 31.] Affirmed.

[¶ 32.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 33.] SABERS and MEIERHENRY, Justices, dissent.

MEIERHENRY, Justice (dissenting).

[¶ 34.] I respectfully dissent. Based upon the plain meaning of the statutory language, Gloe should be allowed to recover from his own underinsured coverage for the wrongful death of his parents. The majority concludes that the law was intended to protect only the insured person's injury or death. This, the majority concludes is public policy. I cannot agree. Public policy is what the legislature says it is. What the legislature said is that an insured may claim under his own policy if he is legally entitled to recover for a death caused by an underinsured tortfeasor.

[¶ 35.] The majority reaches a contrary conclusion, in part, by emphasizing one portion of the statutory language in SDCL 58–11–9 and deemphasizing the statutory language as a whole. The majority concludes that only an "insured's" bodily injury or death is protected by the underinsurance coverage because the statutory

language which expressly requires uninsured coverage for bodily injury and death is "for the protection of persons insured thereunder." Yet a closer analysis of the precise language of the statute further defines "persons insured thereunder." It includes in the definition "persons insured thereunder *who are legally entitled to recover ... because of bodily injury, sickness or disease, including death, resulting therefrom.*" *Id.* (emphasis added). The plain meaning of the language cannot be overlooked.

[¶ 36.] We have consistently restrained our interpretation of a law to the plain meaning of the words and have declined to expand its meaning to what we think it should have said or what we think the legislature may have meant. We should also restrain ourselves in this case. If the legislature does not want underinsured coverage for wrongful death beneficiaries, it can amend the language of the statutes clearly to say so, as has been done in some other states. We recently reiterated how we determine legislative intent:

The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said, and *the court must confine itself to the language used.*

Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and *the Court's only function is to declare the meaning of the statute as clearly expressed.* Moreover, [i]n arriving at the intention of the Legislature, it is presumed that the words of the statute have been used to convey their ordinary, popular meaning. SDCL 2–14–1 requires that words in a statute are to be understood in their ordinary sense. We finally note that a [j]udicial interpretation of a statute that

fail[ ][s] to acknowledge its plain language would amount to judicial supervision of the legislature.

*In re West River Electric Ass'n. Inc.,* 2004 SD 11, ¶ 21, 675 N.W.2d 222, 228 (citations and quotations omitted).

[¶ 37.] The plain language of SDCL 58–11–9 requires coverage to insureds "who are legally entitled to recover damages." SDCL 58–11–9. The plain language in the underinsured motorist coverage statutes likewise contemplates an insured's coverage on a wrongful death claim. SDCL 58–11–9.5 provides:

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as *its insured may recover on account of bodily injury or death* arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon.

(Emphasis added). As Gloe points out, in South Dakota decedents or estates of decedents cannot legally recover for their own deaths. SDCL 21–5–5. With this in mind, it is conceivable that the legislature intended to provide coverage protection for an insured who is "legally entitled to recover damages … because of … death," and underinsurance coverage for "death of" a person, and for "recover[y] on account of … death." SDCL 58–11–9, –9.4, –9.5. This is particularly true since this is the plain meaning of the language the legislature used.

[¶ 38.] Another principle of statutory construction is to give effect to each word, phrase or sentence of a statute.

> A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, … No clause sentence or word shall be construed as superfluous, void or insignificant if the construction can be found which will give force to and preserve all the words of the statute. *While every word of a statute must be presumed to have been used for a purpose, it is also the case that every word excluded from a statute must be presumed to have been excluded for a purpose.*

2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.06, 181–92 (6th Ed 2000) (emphasis added). We have to presume that the legislature used the words it did for a purpose and left out words for a purpose. The legislature wanted protection for those who suffered uncompensated damages due to underinsured and uninsured motorists' negligence. Those suffering damages as outlined by the statute are those who are legally entitled to recover damages for bodily injury and death. The only one who can legally recover damages for death is one entitled to recover under South Dakota's wrongful death statutes. Had the legislature intended to limit recovery to an insured's own injury or to a household member's injury or death, it could have easily done so. For example, the legislature could have written the statute to say:

> "Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death [*of an insured*] arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon."

*See* SDCL 58–11–9.5. The legislature also could have clearly limited the coverage expressed in SDCL 58–11–9 by changing or inserting different language. Instead of using language allowing recovery of damages because of "death," without qualifica-

252

tion, it could have used a more limiting phrase such as "death [of an insured]." *Id.* The bottom line is that the legislature did not limit coverage. There is nothing ambiguous about the language and no need to look to other jurisdictions. The legislature set up the statutory recovery for wrongful death; it also required coverage when a death results from the negligence of underinsured and uninsured motorists. It is logical to conclude that the intent of the law was to protect those who are harmed when death results, i.e. wrongful death beneficiaries. The legislature should be the entity to change the language of the law if this was not the intent, not this Court.

[¶ 39.] I would reverse the lower court and allow Gloe's claim to proceed.

[¶ 40.] SABERS, Justice, joins this dissent.