#25783-a-JKK

**2011 S.D. 47**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DE SMET INSURANCE COMPANY
OF SOUTH DAKOTA,                                   Plaintiff and Appellee,

    v.

TABITHA POURIER,                                   Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE THOMAS L. TRIMBLE
Judge

\* \* \* \*

JESSICA L. LARSON of
Beardsley Jensen & Von Wald, Prof. LLC          Attorneys for plaintiff
Rapid City, South Dakota                        and appellee.


ROBERT L. MORRIS of
Day Morris Law Firm, LLP                         Attorneys for defendant
Belle Fourche, South Dakota                      and appellant.

\* \* \* \*

ARGUED ON APRIL 27, 2011

OPINION FILED **08/17/11**

#25783

KONENKAMP, Justice

[¶1.]     An insured was seriously injured in an automobile accident, suffering damages in excess of $250,000. After receiving $25,000 from the tortfeasor's liability carrier and $100,000 in underinsured motorist coverage from her primary insurer, she sought an additional $100,000 in underinsured coverage from her excess carrier. But the excess carrier denied coverage, asserting that an exclusion in the policy precluded coverage. On cross motions for summary judgment, the circuit court declared that the excess carrier's exclusion was valid and enforceable. Because the policy exclusion is not against public policy, we affirm.

## Background

[¶2.]     Tabitha Pourier was seriously injured in an automobile accident on October 11, 2006, when a vehicle driven by Jamie Yellow Horse struck Pourier's Plymouth Neon. Pourier incurred medical expenses in excess of $250,000. Yellow Horse was insured through Dairyland Insurance with a $25,000 liability policy limit. Dairyland paid Pourier $25,000. Pourier's Neon was insured by GEICO through an insurance policy issued to her mother, Susan Pourier. The GEICO policy contained underinsured motorist coverage at $100,000 per person. After deducting the $25,000 received from Dairyland, GEICO paid Pourier $75,000 in underinsured benefits.

[¶3.]     At the time of the accident, Pourier was a minor. Her parents were divorced, and she resided with her father, Doug Pourier. Doug owned an insurance policy through De Smet Insurance Company of South Dakota. Pourier was also an insured under the policy. The De Smet policy provided underinsured motorist

-1-

coverage at $100,000 per person. The parties do not dispute that Pourier suffered at least $250,000 in damages as a result of the accident. Because she had $150,000 left in uncompensated damages, Pourier requested $100,000 in underinsured motorist coverage from De Smet. De Smet refused to pay, asserting that an exclusion in the policy precluded coverage. That exclusion states, "We do not provide Underinsured Motorist Coverage for 'bodily injury' sustained by any person: 1. While 'occupying,' or when struck by, any motor vehicle owned by you or any 'family member' which is not insured for this coverage under this policy." This provision is commonly referred to as an "owned-but-not-insured" clause. It is undisputed that Pourier (any person) was occupying a vehicle owned by her (a family member of Doug), which was not insured for underinsured coverage by De Smet, invoking the exclusion.

[¶4.] In September 2007, De Smet brought a declaratory action, asking that the court determine the rights of the parties under the insurance policy. De Smet argued that coverage did not apply because Pourier was driving an owned-but-not-insured vehicle, which was excluded from underinsured coverage by the policy. It also asserted that South Dakota law prohibits Pourier from stacking underinsured motorist coverages from two separate policies. The parties filed cross motions for summary judgment. The circuit court issued a letter decision, finding that De Smet's policy exclusion was valid against Pourier, and also that South Dakota law prohibited stacking. The court granted De Smet's motion for summary judgment. Pourier appeals asserting that De Smet's policy exclusion is void as against public

policy, and South Dakota law allows Pourier's recovery under De Smet's underinsured motorist coverage.[1]

## Analysis and Decision

[¶5.] Pourier asks this Court to declare De Smet's owned-but-not-insured exclusion void under these facts as against South Dakota's public policy. She argues that the Legislature's purpose in requiring underinsured motorist coverage under SDCL 58-11-9.5 is to protect an insured who is injured by an underinsured motorist. In Pourier's view, it should be immaterial whether she was riding in a vehicle owned by her but insured by another company. She argues that she is not asking that De Smet be the primary insurer, as would be the case if she had no insurance on the vehicle she drove. Instead, she emphasizes that she has at least $150,000 in uncompensated damages and was driving an insured vehicle. She asks this Court to allow a claim for excess — secondary — coverage. For example, in cases where there is no insurance on the insured's vehicle, then the exclusion would be valid. But because here Pourier's vehicle was insured and she has uncompensated damages, De Smet should have to pay as the secondary insurer, consistent with South Dakota law and public policy.

---

1. The material facts are undisputed, and therefore, "our review is limited to determining whether the trial court correctly applied the law." *Kobbeman v. Oleson*, 1998 S.D. 20, ¶ 4, 574 N.W.2d 633, 635. "Statutory construction and insurance contract interpretation are questions of law reviewable de novo." *Demaray v. De Smet Farm Mut. Ins. Co.*, 2011 S.D. 39, ¶ 8, __ N.W.2d. __, __ (citing *Auto-Owners Ins. Co. v. Hansen Housing, Inc.*, 2000 S.D. 13, ¶ 10, 604 N.W.2d 504, 509 (citations omitted)).

[¶6.]     De Smet concedes that underinsured motorist coverage is generally portable: it follows the insured rather than the vehicle.  But De Smet contends that it is not against public policy for an insurance company to exclude coverage in certain situations.  *See Cimarron Ins. Co. v. Croyle*, 479 N.W.2d 881, 886 (S.D. 1992), *superseded by statute,* SDCL 32-35-70 (insurance companies have statutory right to place conditions on underinsured motorist coverage).  De Smet further argues that SDCL 58-11-9.5 contemplates that an insurer will include terms and conditions limiting underinsured motorist coverage, as SDCL 58-11-9.5 starts with, "Subject to the terms and conditions of such underinsured motorist coverage. . . ."

[¶7.]     We have never ruled on the validity of an owned-but-not-insured provision.  Many courts from other jurisdictions have, however, and the majority of those courts have found the exclusion valid and enforceable.[2]  In the majority of courts, the exclusion is upheld as a way to prevent insureds from purchasing insurance for one car only, and then attempting to apply the underinsured coverage from that insured vehicle to an accident occurring in an uninsured vehicle or from a vehicle insured by a different company.  *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d

---

2.     *Clampit v. State Farm Mut. Auto. Ins. Co.*, 828 S.W.2d 593, 597 (Ark. 1992); *Meckert v. Transamerica Ins. Co.,* 701 P.2d 217, 220 (Idaho 1985), *superseded by statute on other grounds,* Idaho Code Ann. 41-2502(1), *as stated in Hill v. Am. Family Mut. Ins. Co.,* 2011 WL 13900 (Idaho); *IDS Prop. Cas. Ins. Co. v. Kalberer*, 661 N.E.2d 881, 885 (Ind. Ct. App. 1996); *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 309-10 (Iowa 1998); *Powell v. State Farm Mut. Auto. Ins. Co.*, 585 A.2d 286, 290 (Md. Ct. Spec. App. 1991); *Hall v. Nationwide Mut. Fire Ins. Co.*, 2005 WL 2100627 (Ohio) (unpublished); *Estate of Demutis v. Erie Ins. Exch.*, 851 A.2d 172, 173-74 (Pa. Super. Ct. 2004); *Nationwide Mut. Ins. Co. v. Viti*, 850 A.2d 104, 108-09 (R.I. 2004); *Deel v. Sweeney,* 383 S.E.2d 92, 94-95 (W. Va. 1989).

303. 309-10 (Iowa 1998); *see also Lefler v. Gen. Cas. Co.*, 260 F.3d 942, 945 (8th Cir. 2001) (interpreting Iowa law). One court reasoned that invalidating the exclusion would "permit an owner to buy excess coverage under one policy for one vehicle at a relatively small premium and coverage under a separate policy for his other vehicles at a lesser cost, and have the excess coverage of the first policy apply to the vehicles covered under the subsequent policies."[3] *Powell v. State Farm Mut. Auto. Ins. Co.*, 585 A.2d 286, 291 (Md. Ct. Spec. App. 1991). Moreover, "[i]t is scarcely the purpose of any insurer to write a single [underinsured] coverage upon one of a number of vehicles owned by an insured, or by others in the household, and extend the benefits of such coverage gratis upon all other vehicles — any more than it would write liability, collision, or comprehensive coverages upon one such vehicle and indemnify for such losses as to any other vehicle involved." *IDS Prop. Cas. Ins. Co. v. Kalberer*, 661 N.E.2d 881, 884-85 (Ind. Ct. App. 1996) (quoting John A. Appleman & Jean Appleman, 8C Insurance Law and Practice § 5078.15 at 179 (1981)). Thus, the reasoning is that it is up to insureds to decide which vehicles they want to insure and at what limits: if they want greater protection, then they can pay for it.

---

3.  "The identical problem arises when the same insurance company issues both policies, only here the exposure by the insurance company is slightly different. The insurer receives a premium for two cars, but in an amount only calculated to cover the risk and policy limits for each individual car, not for the combined coverage for two cars on each policy. Consequently, the insured still benefits from a 'free-ride' in the form of double coverage for each vehicle at a premium priced on single coverage." *Clampit*, 828 S.W.2d at 597.

[¶8.]     On the other hand, those courts adopting the minority view have deemed the exclusion void, focusing on the purpose of underinsured motorist coverage. Underinsured motorist coverage is intended to protect injured insureds who are legally entitled to recover damages. *Jaimes v. State Farm Auto Mut. Ins. Co.*, 53 P.3d 743, 746-47 (Colo. Ct. App. 2002); *Mikelson v. United Services Auto. Ass'n*, 111 P.3d 601, 616-17 (Hawaii 2005) (citing *Kau v. State Farm Mut. Auto. Ins. Co.*, 564 P.2d 443 (Hawaii 1977)); *Beddard v. McDaniel*, 645 S.E.2d 153, 153-54 (N.C. Ct. App. 2007). For these courts, the status of the insured at the time of the accident is immaterial: the coverage follows the person, not the vehicle. In *Kau*, which involved a similar exclusion for uninsured coverage, the court noted that such exclusion went against the statute mandating coverage. 564 P.2d at 444 n.1. The court took into account the fact that the insured would have been covered had she been a passenger in a vehicle owned by someone not a member of her household, or been driving a vehicle not her own. Therefore, "[i]t would be anomalous, and certainly inconsistent with the legislative intent, to hold that in those situations the statute would allow recovery but in the present situation it would not." *Id.* In Colorado, a court interpreted its underinsured motorist statute language, "for the protection of persons insured," to mean that the "operative event for coverage under the statute is an injury to an insured arising from an accident involving an at-fault, uninsured or underinsured motor vehicle," and the status of the insured "is not germane to the insurer's obligation to provide UM/UIM benefits." *Jaimes*, 53 P.3d at 746-47.

[¶9.]     Here, De Smet's policy provides that it will "pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury:' 1. Sustained by an 'insured;' and 2. Caused by an accident." Underinsured Motorists Coverage, INSURING AGREEMENT A. "Insured" is defined as "You or any 'family member.'" *Id.* at B. The policy then excludes from coverage "'bodily injury' sustained by any person: 1. While 'occupying,' or when struck by, any motor vehicle owned by you or any 'family member' which is not insured for this coverage under this policy." *Id.* at EXCLUSIONS A.

[¶10.]     SDCL 58-11-9.5 provides:

> Subject to the terms and conditions of such underinsured motorist coverage, the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon. Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

Here, GEICO provided Pourier $75,000 in underinsured motorist coverage as the primary insurer, after deducting the $25,000 paid by Dairyland, and in accord with SDCL 58-11-9.5.

[¶11.]     Although we have not examined an owned-but-not-insured provision in relation to SDCL 58-11-9.5, we have upheld an insurance company's family-member exclusion. *Cimarron Ins. Co.,* 479 N.W.2d at 886. In *Cimarron*, the insured was riding as a passenger in a vehicle driven by her brother, when her brother collided with a vehicle driven by a third person. The insured passenger sought

underinsured motorist benefits from Cimarron for her brother's negligence. The company denied coverage relying on its exclusion for any vehicle "owned by or furnished or available for the regular use of you or any family member." *Id.* at 882-83. On appeal to this Court, the insured argued that Cimarron's provision was void as against public policy. Cimarron responded that SDCL 58-11-9.5 allows it to place conditions on underinsured motorist coverage. This Court agreed. *Id.* at 885. It then interpreted the plain meaning of the family-member exclusion, concluding that it excluded the *insured's* vehicle from underinsured motorist benefits and upheld the exclusion.

[¶12.]      Similar to Cimarron's argument, De Smet relies on SDCL 58-11-9.5 to assert its right to place terms and conditions on its underinsured motorist coverage. It argues that its owned-but-not-insured limitation is reasonable, hence not against public policy under SDCL 58-11-9.5, in light of the fact that such clause protects insurers from having to "insure against risk of an undesignated but owned vehicle, or a different or more dangerous type of vehicle of which it is unaware, unable to underwrite, and unable to charge a premium therefor." *See Lefler*, 260 F.3d at 945. Nothing in SDCL 58-11-9.5 requires an insurer to pay underinsured motorist benefits in every circumstance.[4] Moreover, an insured desiring greater

---

4.      Of course, we agree with the dissent that the "subject to the terms and conditions language" does not mean that an insurer has unfettered authority to create restrictions against coverage. Concededly, we have stated that generally, the purpose of UM/UIM coverage is to protect the insured party injured by the negligence of an uninsured/underinsured motorist. *Gloe v. Iowa Mut. Ins. Co.*, 2005 S.D. 29, ¶ 17, 694 N.W.2d 238, 245. But the public policy expressed in SDCL 58-11-9.5 is not violated by owned-but-not-insured clauses because the statute contemplates that mandated UIM coverage is

(continued . . .)

underinsured motorist protection from the negligence of underinsured drivers has the option of purchasing additional underinsured coverage. To mandate that Pourier recover underinsured motorist benefits from De Smet would allow her (or her parent) to increase the underinsured coverage on a vehicle not insured by De Smet without purchasing additional underinsured coverage. De Smet's prohibition of such an arrangement is not against public policy.[5]

[¶13.]     Affirmed.

[¶14.]     GILBERTSON, Chief Justice, and ZINTER, Justice, concur.

[¶15.]     SEVERSON, Justice, and MEIERHENRY, Retired Justice, dissent.


MEIERHENRY, Retired Justice (dissenting).

[¶16.]     I respectfully dissent and would hold that De Smet's owned-but-not-insured exclusion is contrary to the plain meaning of the statute and is therefore

---

(. . . continued)

limited to the *coverage* purchased for the *insured vehicle.* Although the statute requires the insurance companies to provide UIM insurance, it specifically limits coverage "to the underinsured motorist's *coverage limits on the vehicle* of the party recovering . . . ." (Emphasis added.) In this case, there were no coverage limits on the vehicle of the party seeking to recover because no coverage of any kind was purchased. Therefore, the language of SDCL 58-11-9.5 itself reflects that owned-but-not-insured clauses do not violate the public policy expressed in the statute.

5.     Pourier claims that the exclusion is against public policy because she would be entitled to coverage had she been a passenger in a third person's vehicle or a pedestrian at the time she was injured. In those situations, however, De Smet would be the primary insurer, unlike its secondary insurer status in this case. Nonetheless, we must examine the exclusion within the facts of this case and not consider hypothetical situations where the exclusion might violate public policy. Therefore, if under the facts of this case the exclusion is valid, we will uphold it.

void as against public policy. The South Dakota Legislature set forth the policy on underinsured motorist coverage in SDCL 58-11-9.4 and SDCL 58-11-9.5. The Legislature required that all vehicle liability policies "issued or delivered" in South Dakota provide "underinsured motorist coverage . . . at a face amount equal to the bodily injury limits of the policy." SDCL 58-11-9.4.[6] The Legislature further required that "the insurance company agree to pay its own insured for uncompensated damages." SDCL 58-11-9.5. SDCL 58-11-9.5 provides:

> Subject to the terms and conditions of such underinsured motorist coverage, ***the insurance company agrees to pay its own insured for uncompensated damages as its insured may recover on account of bodily injury or death arising out of an automobile accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon.*** Coverage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against.

---

6.    SDCL 58-11-9.4 provides as follows:

> No motor vehicle liability policy of insurance may be issued or delivered in this state with respect to any motor vehicle registered or principally garaged in this state, except for snowmobiles, unless underinsured motorist coverage is provided therein at a face amount equal to the bodily injury limits of the policy. However, the coverage required by this section may not exceed the limits of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, unless additional coverage is requested by the insured. Any policy insuring government owned vehicles may not be required to provide underinsured motorist coverage.

(emphasis added). The public policy proclaimed in this statute is that the insurance company "agrees to pay its own insured for uncompensated damages." *Id. See Gloe v. Iowa Mut. Ins. Co.*, 2005 S.D. 29, ¶ 17, 694 N.W.2d 238, 245 ("[O]ur cases have noted that the purpose of UM/UIM coverage is to protect the *insured* party *who is injured* in an automobile accident by the negligence of an uninsured/underinsured motorist."). Therefore De Smet's coverage should attach under this statute because Pourier was the insurer's "own insured" who had "uncompensated damages."

[¶17.]    Here, however, De Smet focuses on the first clause of SDCL 58-11-9.5, which it claims provides the ability not only to limit but also to nullify the Legislature's main requirement to pay its insured for uncompensated damages. I disagree. The language "[s]ubject to the terms and conditions of such underinsured motorist coverage" should not be used to deny coverage to an insured because the vehicle she was in was not insured by De Smet. *See supra* ¶ 6. This is a point that we have already recognized in *Gloe v. Iowa Mut. Ins. Co.*, 2005 S.D. 29, ¶ 16, 694 N.W.2d 238, 244, wherein we stated that the "'subject to the terms and conditions' language of SDCL 58-11-9.5 [is] not intended to permit any restriction an insurer may wish to create" and that any "conditions and limitations imposed by the insurance company must be consistent with public policy." (citations omitted). Therefore, I would conclude that the Legislature did not intend to allow De Smet to avoid paying its own insured in such a restrictive manner.

[¶18.]    Pourier's father paid premiums to cover her in the event she was injured by an underinsured driver. That is exactly what happened here. Underinsured coverage is intended to protect the insured. Further, there is no

indication that De Smet's insurance obligation is actuarially impacted simply because Pourier was driving a vehicle owned and insured by her mother. Pourier could have been a passenger in a friend's car, in which case De Smet would have had to provide underinsured coverage. *See Jaimes v. State Farm Mut. Auto Ins. Co.*, 53 P.3d 743, 747 (Colo. App. 2002) (holding that the "owned but not insured" exclusion was void as against public policy).

[¶19.] Furthermore, De Smet's attempt to avoid coverage based on the premise that its exclusion is reasonable to avoid extending coverage to other non-insured vehicles has no application here. Pourier was not attempting to insure one vehicle to get coverage on another. *See supra* ¶ 7. Rather, Pourier was in the common position of having divorced parents who both listed her as an insured driver. This situation should not be contorted to prevent coverage. I would hold that De Smet's insurance policy's exclusion violates SDCL 58-11-9.5 and is void as against public policy.

[¶20.] SEVERSON, Justice, joins this dissent.